(No. 30353.

GEORGE L. QUILICI *et al.*, Appellees, *vs.* THE VILLAGE OF MOUNT PROSPECT, Appellant.

*Opinion filed March 18, 1948.*

FRANK M. OPEKA, of Chicago, for appellant.

GOLDBERG, DEVOE & BRUSSELL, (ARTHUR J. GOLDBERG, and ABRAHAM W. BRUSSELL, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal by the village of Mount Prospect from a judgment and decree of the circuit court of Cook County, declaring the amendatory zoning ordinance of the village, adopted on May 6, 1944, unconstitutional and invalid insofar as it affected certain property situated in the village, granting an injunction restraining the village from enforcing the ordinance against the property involved and removing the ordinance as a cloud upon the title to the property. The trial judge has certified that the validity of a municipal ordinance is involved and that public interest requires an appeal to this court.

A complaint filed by the plaintiffs, George L. and Virginia I. Quilici, alleged that they were the owners of two lots in the village of Mount Prospect purchased in 1928 for $3990; that, at the time they purchased their two lots and at the time the lot adjacent to them was purchased by its present owners, there was in full force and effect a 1923 zoning ordinance of the village; that the lots were then zoned for business or commercial uses and all of the

lots were purchased in reliance upon the zoning ordinance; that all of the lots face on a main-traveled four-lane highway known as Northwest Highway and are in close proximity to a railroad paralleling the highway; that, since acquiring their property, they had spent $2750 for local improvements in order to conserve the property for business purposes; that, on May 6, 1944, the zoning ordinance was amended, without any actual notice to the plaintiffs, and, by this amendment, the property was rezoned so as to permit only the use of the property for residential, school, church, park and gardening purposes, thereby depreciating its value; that there is ample vacant property for residential use in the village, and that the ordinance is contrary to the State and Federal constitutions because it is arbitrary and does not bear any reasonable relation, or tend, to promote or preserve the public health, comfort, morals, safety or general welfare, is confiscatory, and constitutes a taking of plaintiffs' property without just compensation and due process of law. Plaintiffs also charged that the ordinance was invalid and constituted a cloud upon the property, and their complaint prayed for a declaratory judgment finding the ordinance unconstitutional and invalid as affecting the lots in question and for other relief, including injunction, if necessary.

Defendant filed its motion to dismiss plaintiffs' action upon the ground that the complaint alleged no controversy except as to constitutionality; that there were no facts to warrant a declaratory judgment, and that the plaintiffs had a remedy by injunction to determine the validity of the ordinance. In this motion, the village also contended that the complaint should have been stricken because of general, vague and indefinite allegations and conclusions. This motion was overruled and, thereafter, the defendant filed an answer admitting the location of the lots and asserting the legal passage of the amendatory ordinance of 1944. The cause was then heard by the trial

judge and, after a full hearing, the judgment and decree for plaintiffs was entered.

The village of Mount Prospect, approximately two miles square in area, is situated about nineteen miles northwest of Chicago. It is a residential community, having a population of about 2,600, and has very little industrial property. The village is bisected by the Northwest Highway and by the parallel Chicago and North Western Railroad right-of-way, both running in a northwesterly and southeasterly direction. The Northwest Highway is one of the main highways in the northern part of Illinois and is the main thoroughfare to the northwest. The highway is approximately 80 feet wide and between the southern edge of the highway and the North Western Railroad right-of-way there is approximately 20 feet of ground. The highway is four-lane and heavily used by both pleasure and commercial vehicles.

The Chicago and North Western Railroad right-of-way is a "main line" at this point on which suburban trains run and there is a siding in front of the property in question in the village of Mount Prospect. Approximately 42 trains pass through the village daily.

On December 4, 1923, the village passed a zoning ordinance which, among other things, zoned as commercial the property along both sides of the railroad and highway throughout the village. In 1923, the population of the village was less than 250 and development did not begin until 1925. In 1925 and under the zoning ordinance of 1923, there were about 4500 residential lots and approximately 550 business lots in the village. In 1927, the plaintiffs purchased lots 40 and 41, relying on the zoning classification of these lots as commercial, or business, property. At the time of the purchase, lots zoned for commercial purposes were marketed for a substantially higher price than those zoned for residential purposes. Lots facing the Northwest Highway, all zoned for business pur-

poses, ranged in price from $1800 to $2200 each while residential lots in the same subdivision were sold at $900 to $1200. Since acquiring these lots, the plaintiffs made certain expenditures for improvements such as paving, drains and water mains, which, with the purchase price, raised the expenditures on the lots to the aggregate sum of approximately $10,000.

At the time the plaintiffs acquired lots 40 and 41, there was not a single dwelling and no building of any kind in either direction on the Northwest Highway for about half a mile. The condition today is substantially the same. The nearest building on the highway, approximately a half mile from the lots in question, is a gasoline station. There has been no building in the vicinity subsequent to the passage of the 1944 ordinance, and no residences have been constructed at any time along the Northwest Highway.

Since 1929, the plaintiffs have had lots 40 and 41 listed for sale with agents and brokers and, also, had a large signboard erected on the property offering it for sale. In 1946, they received an offer for the lots from a broker in Chicago who was willing to pay $5000 for them for use for commercial purposes, but this offer was withdrawn when it was discovered that, in 1944, the property had been rezoned to residential purposes.

On November 5, 1946, the plaintiffs entered into a contract with A. B. Crouch for the sale of the lots subject to the condition that the plaintiffs have lots 40 and 41 rezoned to their original status of business property and that the purchaser obtain lot 39, which, it was also agreed, was to be rezoned to the status of business property. The plaintiffs then applied for rezoning of lots 40 and 41 and a public hearing resulted in a denial of their application for rezoning.

Plaintiffs contend that the amendatory zoning ordinance of 1944 is arbitrary, unreasonable and confiscatory as to the particular property owned by them. They argue that

the 1944 amendatory ordinance is arbitrary, unreasonable and confiscatory and bears no substantial relationship to the exercise by the village of Mount Prospect of any police power delegated to it by the General Assembly under section 1 of article 73 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1947, chap. 24, par. 73-1.) The defendant village maintains that the validity or the constitutionality of a municipal ordinance cannot be questioned by a proceeding under the declaratory judgment provisions of the Civil Practice Act but that injunctive relief is the proper remedy. Defendant further states that the ordinance in controversy being a comprehensive amendment of the original zoning ordinance is valid and constitutional and was adopted pursuant to the legislative grant of powers.

For the purpose of this case we will confine our analysis to the propriety of the decree granting the injunction.

The rules of law applicable to cases of this nature have been considered by this court in many instances. Municipalities may adopt zoning ordinances as an exercise of their police power and thereby may impose a reasonable restraint upon the use of private property. (*Anderman* v. *City of Chicago,* 379 Ill. 236; *Johnson* v. *Village of Villa Park,* 370 Ill. 272.) The ordinances must have a real, substantial relation to the public health, safety, morals or general welfare. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.) Whether the means employed bear any real, substantial relation to the public health, comfort, safety, or welfare, or are essentially arbitrary and unreasonable, is a question subject to judicial review. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Harmon* v. *City of Peoria,* 373 Ill. 594.) A zoning ordinance may be valid in its general aspects, yet invalid as applied to a particular piece of property and a particular set of facts. *Anderman* v. *City of Chicago,* 379 Ill. 236.

The proof of defendant in the instant cause consisted entirely of certified copies of the records and minutes of

meetings wherein the ordinance complained of was passed. No objection has been made to the legality of the proceedings, and the sole question before this court is whether the action was arbitrary and unreasonable and, therefore, void as applied to the property of the plaintiffs. Defendant insists that the burden of proof is upon the person attacking the ordinance to show affirmatively its unreasonableness and that the presumption is in favor of the validity of zoning ordinances adopted pursuant to legislative grant. This contention properly states the law in this regard. *Neef* v. *City of Springfield,* 380 Ill. 275.

In determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory, the extent to which property values are diminished by the provisions of a zoning ordinance must be given consideration. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Anderman* v. *City of Chicago,* 379 Ill. 236.) The character of the neighborhood and the use to which nearby property is put may also be taken into consideration. (*Forbes* v. *Hubbard,* 348 Ill. 166.) It is further the rule that, in ascertaining whether a particular zoning ordinance is in the interest of the public welfare, each case must be determined upon its own peculiar facts. (*Johnson* v. *Village of Villa Park,* 370 Ill. 272.) If the gain to the public by the ordinance is small when compared with the hardship imposed upon the individual property owner by the restrictions of the zoning ordinance, no valid basis for the exercise of the police power exists. *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.

The evidence of plaintiffs discloses that the lots in question front on a heavily traveled four-lane highway used by both passenger vehicles and trucks and busses and which, also, is paralleled at a distance of about twenty feet by a main line of the Chicago and North Western Railroad Company which operates a large number of trains over the line daily. At the time of the purchase of the lots,

plaintiffs bought them relying on the zoning ordinance of 1923 and paid a higher price for the lots as commercial property than asked for residential property in the subdivision. There are no houses built along the highway, the only buildings thereon within the area in question are gasoline stations, and the closest residences to plaintiffs' property are away from the highway. No residences have been built either on the highway or in the general area since the 1944 amendatory ordinance was passed. The reclassification of 1944 concentrated the business property of the village in one area in the center of the village and persons living in the extreme north or the extreme south portions of the village must go to this central portion to shop or carry on their business. The lots owned by plaintiffs have been on the market for some time, but there has never been an opportunity to sell them for residential purposes. There have been offers for the property for commercial purposes. A real-estate expert, testifying for plaintiffs, stated that, in his opinion, the lots could not be sold as residential property and that the highest and best use of the lots both at the time they were purchased and at the present time is for commercial purposes. He further stated that, in his opinion, if the lots cannot be rezoned, they are worth nothing or very little and that as business lots they are worth at least $1500 to $2000 for the 25-foot frontage of each. None of this proof was rebutted in any way by the defendant village.

Upon the basis of this uncontroverted proof, we cannot see the merit in the defendant village's contention that plaintiffs have not maintained the burden of proof in showing the ordinance assailed unreasonable, arbitrary and void as to the lots owned by them. The evidence fails to disclose the necessary reasonable relation between the rezoning of plaintiffs' property as residential property and the public health, safety, morals and welfare. No houses have been built since the 1944 amendatory ordinance was

passed. The houses in the neighborhood of plaintiffs' property were built when the 1923 zoning ordinance was in effect and were therefore built with the knowledge that the property was commercial property and could be used for this purpose. In this regard, the situation is similar to the evidence presented in *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138, where we sustained a ruling of the trial court invalidating an amendatory ordinance attempting to rezone the property of the plaintiff located on a business street in an area which had been commercial for twenty years. The plaintiff had purchased the property when the area was zoned for manufacturing and commercial purposes. The amendatory ordinance rezoned the property for apartment purposes although such purposes were not the highest and best use of the land. Upon the fact situation, we held that the amendatory ordinance was lacking in the basis of the public welfare necessary to sustain it as a valid exercise of the police power. Like holding may be found in *Kennedy* v. *City of Evanston,* 348 Ill. 426, and *Anderman* v. *City of Chicago,* 379 Ill. 236.

It is obvious from the testimony in this record and the plats and maps of the village of Mount Prospect that the area in question has very little desirability, if any, for residential purposes. Under the facts in this case, the rezoning of the property of the plaintiffs reduced its value to such an extent that the restriction comes within the constitutional inhibition against taking private property for public use without just compensation. Such a highly injurious restriction is contrary to the law and the constitution of this State. (*Tews* v. *Woolhiser,* 352 Ill. 212.) Upon the basis of the record here, we can see no relation to the public health, safety, morals or public welfare. Individual rights in the ownership of property were not created by the constitution, but existed before its adoption and are guaranteed by it, and these rights are to be subordinated to the exercise of the police power only when and to the

extent that such exercise of the police power bears a substantial relation to the promotion of the public health, safety, morals or general welfare. (*Zadworny* v. *City of Chicago,* 380 Ill. 470.) The only purpose accomplished by the amendatory zoning ordinance of 1944 is the reduction in value and the restriction on use of plaintiffs' property. The trial judge aptly characterized the enactment of the amendatory zoning ordinance when he said:

"I have before me a case where within a two mile square community which had been comprehensively zoned in 1923, and apparently reasonably zoned, and the character of various portions of the property within the community fixed, so that purchasers coming to it would rely upon it and purchase their property for a specific use or for a specific purpose. Suddenly and without any explanation or without any compelling reason it is rezoned so as to eliminate the possibility of conducting even the business of a grocery store anywhere within the community except within a circumscribed little area, to which the entire community would be driven for the transaction of any of its business.

"From the evidence before me and from an examination of the maps it is even hard to ascertain what could have prompted the selection of that particular portion unless it be to enhance its value at the expense of the rest of the community. And this case is a rather striking example of what a governing board would do arbitrarily and without reason if no relief could be had in the courts from their oppression."

The decree of the circuit court of Cook County granting the injunction is affirmed.

*Decree affirmed.*