(No. 30863.—

THE PEOPLE *ex rel.* Joseph Lumber Company, Appellant, *vs.* THE CITY OF CHICAGO *et al.,* Appellees.

*Opinion filed January 19, 1949.*

J. HERZL SEGAL, and WERNER W. SCHROEDER, both of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, and SYDNEY R. DREBIN, of counsel,) all of Chicago, for appellees.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County denying a writ of *mandamus* sought by the Joseph Lumber Company, hereinafter referred to as plaintiff, and finding the issues for the city of Chicago, hereinafter referred to as defendant.

Plaintiff filed a complaint on January 22, 1948, to compel the commissioner of buildings of the defendant city to

examine building plans and specifications for a lumber yard and to issue a permit for proposed buildings if the plans and specifications complied with all the valid building ordinances. The complaint in substance alleges that the plaintiff is an Illinois corporation, duly licensed by the city of Chicago to engage in the business of operating lumber yards; that on July 25, 1946, plaintiff purchased the property involved herein covering an entire city block, bounded on the south by the right of way of the Chicago, Milwaukee, St. Paul & Pacific railroad, on the west by Narragansett Avenue, on the north by Dickens Avenue, and on the east by Mobile Avenue; that plaintiff applied for and received a permit to construct and thereafter constructed a one-story office building upon the property; that on April 5, 1923, the Chicago zoning ordinance was passed, which ordinance has, from time to time, been amended; that on July 11, 1946, the zoning for residence use was changed to manufacturing; that at the time of the purchase of the property in question by the plaintiff on July 25, 1946, it was zoned for manufacturing use and that one of the uses permitted in such a district is a lumber yard; that plaintiff purchased this property in reliance upon the fact that the same was zoned for manufacturing; that on June 25, 1947, the zoning ordinance of the defendant city was amended changing the use of the property involved from manufacturing back to family residence; that on December 29, 1947, plaintiff applied to the building commissioner of the defendant city for a permit to construct a lumber yard upon the property and filed plans and specifications which, in all respects, complied with the provisions of the building code; that the building commissioner refused to approve such application upon the ground that the property was zoned for family residence under the amendatory ordinance of June 25, 1947, and that such improvements were not permissible because section 19 of the ordinance prohibits the extension of a nonconforming use; that the amenda-

tory ordinance of June 25, 1947, as applied to plaintiff's property, is void and results in a denial to the plaintiff of equal protection of the laws and deprives the plaintiff of property rights without due process of law.

The defendant's answer to the complaint admits the corporate status of the plaintiff; that the plaintiff is licensed to operate lumber yards in the defendant city; admits the purchase of the property involved; admits the existence of the Chicago zoning ordinance and also that at the time of the purchase of the property by the plaintiff, said property was zoned for manufacturing use, which includes use as a lumber yard; admits that plaintiff purchased the property in reliance upon the fact that it was zoned for manufacturing use; admits the passage of the amendment to the zoning ordinance on June 25, 1947, and denies that said ordinance is void. The answer also admits the filing and denial of the application for a permit, but denies that the plaintiff made application in form prescribed by the commissioner of buildings or that plaintiff had otherwise complied with requirements of the municipal code of Chicago. The answer further states that all other allegations of the complaint are conclusions of law and arguments which the defendant city is not required to answer.

The evidence in the record discloses that the property in question covers an area of 346,000 square feet or approximately 8 acres, having a frontage of 597 feet on Dickens Avenue and the railroad right of way, and 579 feet frontage on Narragansett Avenue and Mobile Avenue.

On Narragansett Avenue is a bus line with heavy traffic. The busses are electric feeder busses, operating from trolley wires and during the day they run every 8 or 10 minutes, with more frequent service being provided during the rush hours. A traffic count made on March 3, 1948, showed that between 8 A.M. and 6 P.M. 1,888 passenger cars and 402 trucks passed the property on Narragansett Avenue.

On Dickens Avenue, passing the same property, there were 362 passenger cars and 57 trucks. Spot checks made about once a week since 1946 showed a count of about 4 cars per minute passing the subject tract on Narrangansett Avenue.

There are five railroad tracks along the line of railway west of Narragansett Avenue. At Narragansett Avenue the tracks increase to twelve in number and occupy an area 400 feet in width. To the east of Narragansett Avenue these twelve double tracks increase to 49 tracks in the yards at Galewood and in these yards there is a roundhouse used for the storage and repairing of engines. The Galewood station of the railroad is just east of Narragansett Avenue with 42 passenger trains passing this station daily. Also, using the tracks past the property in question there are 50 scheduled freight movements and approximately 15 or 20 unscheduled and irregular train movements daily. The use district map No. 12, showing the zoning of the entire area under the 1923 ordinance discloses that all of the property from Central Avenue on the east to Oak Park Avenue on the west along the railroad right of way was zoned for manufacturing purposes, as well as a strip partially bordering on Narragansett Avenue from the right of way to the north to Diversey Avenue. At this time the subject property, with the exception of 125 feet on Dickens Avenue and a small strip on Narragansett Avenue, was zoned for manufacturing and the excepted strips were zoned for commercial use. The use district map of 1942, whereby the property in question was zoned for single-family use, discloses that the only change over the 1923 map relates to the subject property and the portion occupied by the Burbank elementary school, which was constructed in 1930. The evidence indicates that all of the area shown on both the 1942 and 1923 use maps has been taken over by manufacturing companies, and that the entire area along the railroad right of way, with the exception of the subject

property, the property occupied by the school, and two blocks bordered by Narrangansett Avenue on the east, Natchez Avenue on the west, Dickens Avenue on the north, and McLean Avenue on the south, has either been completely occupied by manufacturing plants of all types, or has remained vacant.

Harry Joseph, the president of the plaintiff company, testified, as to matters germane to the issues here, that he purchased the property for $68,000 on July 25, 1946, when the property was unimproved; that he erected an office building at a cost of approximately $5000, but that he wished to use the property for a lumber yard, and improvements would run about one-half million dollars. He further stated that he first became acquainted with the property early in 1946, and did not buy it at that time because it was zoned for residential purposes. When he discovered the property had been rezoned for manufacturing, he bought the property with the intention of using it for the operation of a wholesale and retail business, and that his firm had no other use for that property. He further stated that approximately 100 automobiles use his present yard for business purposes, and that his trucks make a total of 36 deliveries per day, or a total of 136 deliveries in and out of his yard each day. This would hold true in the new location.

The witnesses produced by the defendant, other than expert testimony, consisted of residents of the neighborhood who testified that they built their homes in the area in reliance on the single-family zoning of the neighborhood; that their children attend school at the Luther Burbank School, and that they objected to a lumber yard occupying the property in question. These witnesses further stated that they felt that a lumber yard would affect the safety of the children attending the school.

Photographs were introduced by both parties to the cause showing the tracks, the vacant property, the manu-

facturing areas, the school, residences on the west side of Narragansett Avenue and residences on Mulligan Avenue, which is north of Dickens Avenue. An aerial photograph of the area in question was also introduced, beginning at a point approximately 14 or 15 blocks west of Narragansett Avenue, and reaching a point of approximately the same number of blocks to the east of Narragansett. The photograph shows an area of three or four blocks south of the railroad right of way at Narragansett Avenue and to the north of the railroad right of way, a distance of five or more blocks. This photograph, which is numbered as plaintiff's exhibit 21, shows that the railroad right of way enters the territory from the northwest, curving at Narragansett Avenue into an east and west operation. It is obvious from this exhibit that the area on both sides of the right of way within the entire field of the picture is occupied by either vacant property or manufacturing plants, with the exception of the school, the Shriner's hospital, and the two blocks of residence dwellings just south of the property in question. The property between the railroad right of way and the first residences within these two blocks is, in the main, vacant and undeveloped.

Three expert witnesses testified at the hearing in the court below, two testifying for the plaintiff and one testifying for the defendant. Mark Levy, a realtor and appraiser in the city of Chicago for a period of 41 years, testified for the plaintiff. Counsel for the defendant conceded that Levy was one of the prominent realtors and was qualified to know values generally over the city. Suffice it to say that his qualifications occupy over six pages in the abstract of record. Levy testified that from observations of the character of the construction, it was evident there had not been much new building in the immediate vicinity. He further stated that the usual zoning of property adjoining freight carrier railroads was for manufacturing or industrial uses and that in his opinion, the property in question here, if

zoned for manufacturing, had a valuation of 40 cents a square foot, or approximately $145,000 for the entire tract. In arriving at that opinion, he took into consideration the location of the property, the facilities afforded by the railroad, the accessibility to other parts of the city, the assumption of a manufacturing use, trucking facilities, the surrounding neighborhood, comparable lands, sales of similar property made in the last few years, asking prices, the demand and supply, the trend of the district, and the use to which properties in the district were being put. His opinion of the value for single-family residence use was that the land had a value of $25,000, based upon the size and area of the land, location, transportation facilities, proximity to places of employment, industry, the number of lots that might be sold, the percentage necessary to be used for streets and alleys, proximity to the railroad with its incidental objections to switching movements, smoke and noise, the volume of vehicular traffic on surrounding streets, and the low price for which the property would have to be sold for such a purpose. His opinion as to the highest and best use of the land was that it was best used for manufacturing purposes.

Another expert witness testified for the plaintiff and reached the same conclusions as those reached by Levy, stating that the cost of development of the property for single-residence property would be prohibitive for a subdivider to undertake.

One expert witness testified for the defendant that the tract could be subdivided for residence purposes and that the present value undeveloped would be about $88,000. This was based on the Narragansett Avenue and McLean Avenue properties being used for business purposes. After the expenditure of the $88,000 expenditures of $30 to $35 per foot for utilities, sidewalks, streets and alleys would be necessary.

On the basis of this record the plaintiff contends the order of the circuit court should be reversed on the grounds that (a) the city council cannot consistently change the zoning of the property, purchased upon the strength of existing zoning regulations, effective reasons for the change being totally absent; (b) the city council abused its legislative discretion in changing the zoning of the tract from manufacturing to single-family residences, in view of the highest and best use of the property; (c) the amendment to the zoning ordinance deprives the plaintiff of property without due process of law to the extent of the difference in value between residential use and manufacturing use; (d) the action of the city council in rezoning the property was arbitrary and unreasonable in that it did not tend to promote the general welfare and inflicted financial injury upon the plaintiff without an increasing benefit to the public.

The defendant contends that the history of the property involved and that of the property in the immediate vicinity shows that the property was properly zoned for a single-family residence use; that the ordinance of July 11, 1946, rezoning the property to a manufacturing use had no relation to the public health, comfort, morals, safety or welfare and was of no effect; that under the facts the ordinance of June 25, 1947, rezoning the property to a single-family residence use was reasonable; that the property is residential in character and the rezoning of such property as a single-family residence use is not arbitrary and unreasonable because it tended to promote the public health, comfort, morals, safety and general welfare.

The parties herein have cited cases to this court in support of these contentions which are not opposed in holdings or in principles nor are the cases cited by the parties in conflict. In many instances the briefs of the parties hereto cite identical cases laying down the general rules of law applicable in situations of this kind. The sole problem pre-

sented to this court for decision is the application of the facts in the record in this case to the established principles of law, in this State as enunciated by this court.

The rules of law applicable to cases of this nature have long been well established. They have been reviewed in the recent case of *Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418. Municipalities may adopt zoning ordinances as an exercise of their police power and thereby may impose a reasonable restraint upon the use of private property. (*Anderman* v. *City of Chicago,* 379 Ill. 236; *Johnson* v. *Village of Villa Park,* 370 Ill. 272.) The ordinance must have a real, substantial relation to the public health, safety, morals or general welfare. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.) Whether the means employed bear any real, substantial relation to the public health, comfort, safety or welfare or are essentially arbitrary or unreasonable is a question subject to judicial review. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Harmon* v. *City of Peoria,* 373 Ill. 594.) A zoning ordinance may be valid in its general aspects, yet invalid as applied to a particular piece of property and a particular set of facts. (*Anderman* v. *City of Chicago,* 379 Ill. 236.) On the other hand, the legislative judgment of the village council is conclusive unless it is shown to be arbitrary, capricious and unrelated to the public morals, safety and general welfare. (*Mercer Lumber Companies* v. *Village of Glencoe,* 390 Ill. 138.) Where there is room for a legitimate difference of opinion concerning the reasonableness of a particular ordinance, the finding of the legislative body will not be disturbed. *Burkholder* v. *City of Sterling,* 381 Ill. 564; *Harmon* v. *City of Peoria,* 373 Ill. 594.

As was also said in *Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418, in determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory, the extent to which property values are diminished by the provisions of a zoning ordinance, must

be given consideration. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Anderman* v. *City of Chicago,* 379 Ill. 236.). The character of the neighborhood and the use to which nearby property is put may also be taken into consideration. (*Forbes* v. *Hubbard,* 348 Ill. 166.) In ascertaining whether a particular zoning ordinance is in the interest of the public welfare, each case must be determined upon its own peculiar facts. (*Johnson* v. *Village of Villa Park,* 370 Ill. 272.) If the gain to the public by the ordinance is small when compared with the hardship imposed upon the individual property owner by the restrictions of the zoning ordinance, no valid basis for the exercise of the police power exists. *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.

The defendant contends, in effect, that the ordinance of June 25, 1947, rezoning the property from manufacturing to single-family residence use was reasonable in that the area involved is residential in character and that the ordinance of July 11, 1946, rezoning the subject property for a manufacturing use was void in that it had no relation to the public health, morals, safety and general welfare. There are two difficulties in accepting this contention of the defendant. First, by arguing that the ordinance of July 11, 1946, was improper and invalid, the city is attempting to subject such ordinance to collateral attack. The proof in the record is undisputed that the plaintiff purchased this property in reliance upon the zoning ordinance of July 11, 1946, and his rights in purchasing such property with such reliance are not subject to collateral attack from the city on the ordinance at this time. The city cannot deny the validity of the ordinance of July 11, 1946, which it passed and which remained in full force and effect for some eleven months. (*People ex rel. Village of Colfax* v. *Maxon,* 139 Ill. 306.) Secondly, the city, to support the argument as to the validity of the ordinance of June 25, 1947, states that most of the property bounded on the

west by the east side of Natchez Avenue, on the north by Grand Avenue, on the east by Melvina Avenue, and on the south by the railroad right of way, is residential in .character. The area selected by the defendant occupies approximately 3 x 6 blocks and is a part of the total area shown on the use district maps of the 1923 ordinance and the 1942 ordinance. The area indicated on those maps comprises approximately twenty-nine square blocks. These maps further indicate that a manufacturing area has always existed along the railroad right of way and along Natchez and Narragansett avenues, particularly surrounding the areas selected by the city for argument. The defendant contends that the rezoning of the property herein to other than manufacturing use was consistent with general zoning principles that all property in a given area should have the same use. (*City of Aurora* v. *Burns,* 319 Ill. 84.) It is apparent from the history of the property in question, from amendments to the zoning ordinance of 1923, and the use of all the property shown on the district use map, together with the property on which the school is located, that this property was selected for rezoning and all other property theretofore established for manufacturing purposes was allowed to remain in such a classification. This is not consistent with the use allowed of other property along the right of way.

The evidence discloses more than 100 train movements per day along the railroad right of way. These train movements consist of both passenger and freight movements, as well as switching movements for the manufacturing companies presently in the area. Narragansett Avenue is a heavily travelled street, traffic checks indicating heavy bus movements, together with more than 2200 passenger cars and trucks, passing the property in question daily. At the crossing of Narragansett with the railroad right of way there are 12 double tracks occupying a space of 400 feet.

The plaintiff purchased the property, relying on the zoning ordinance of July 11, 1946, and the plaintiff further testified that it had no use for the property other than to use it as a lumber yard. It is obvious from a study of the aerial view of the neighborhood introduced as plaintiff's Exhibit 21, that there has been no building of residential properties, almost without exception, along the entire railroad right of way. Persons living on Narragansett Avenue to the west of the subject property have large manufacturing districts within the space of two blocks. Persons living on Dickens Avenue to the north of the subject property have heavy manufacturing areas within the space of several blocks just east of the school. The railroad yards and the great number of tracks immediately adjacent to the property in question are within the distance of several blocks from those persons residing on Dickens Avenue.

The experts called by the plaintiff detailed the manufacturing in the area and carefully described the railroad right of way and the property on each side of it. These experts offered an opinion, which was not controverted in the evidence, that the value of the property in question at its highest and best use was $145,000 for manufacturing purposes. They further testified that the value of such property for residential purposes was $25,000. The expert offered on behalf of the defendant stated that the value of such property for residential purposes was $86,500 and that he had no opinion as to its value for a manufacturing use. Under either of the statements made by the experts for either of the parties, there is a substantial difference between a residential use and a manufacturing use.

Under the facts of this case as they appear in the record, we cannot distinguish this cause from the facts presented in *Quilici* v. *Village of Mt. Prospect*, 399 Ill. 418. There, as here, the evidence disclosed heavily travelled streets and a main line of railroad which operated a large number of

trains daily over the line. In that case, as here, the plaintiffs purchased the property, relying upon the zoning ordinance in existence, and certainly paid more for the property than the value estimated for it by two of the experts. There, as here, there was no immediate residential building along the area in question and no residences had been built in the *Quilici case* on the highway. There, as here, experts testified as to the value for manufacturing use and value for residential purposes and there, as here, the manufacturing use was the highest and best value to which the land could be put. It should be noted in the instant cause that the testimony and the plats and maps of the area in question demonstrate very little desirability, if any, in the land along the right of way for residential purposes.

The city contends, however, that the rule of law that the subject property should be zoned for the highest and best use has no application when it would greatly diminish the value of the surrounding property and would be against public welfare. (*Neef* v. *City of Springfield,* 380 Ill. 275; *Evanston Best &Co., Inc.* v. *Goodman,* 369 Ill. 207.) The defendant bases this argument on the testimony of its expert who stated that if a lumber yard were erected on the property, residential property values in the area would be reduced by one third.

The plaintiff has spent a considerable portion of its brief analyzing the testimony of the expert for the defendant. It is sufficient to say that a careful study of the figures offered by this expert in support of his testimony on valuations does not afford a basis for his opinion. As pointed out by the plaintiff, if the property were used for residential purposes according to the plan of this expert, the most that could be obtained by a subdivider would be approximately $600 on an investment of $170,000. If the subdivider was so unfortunate as to obtain a lesser price for the building lots available in the tract, his efforts would result in loss of nearly $20,000.

Further, a study and analysis of all the exhibits offered by both the plaintiff and the defendant herein result in the inescapable conclusion that the manufacturing uses to which a great portion of the property in the entire area has been put has resulted in a valuation of the property in the area which could be lowered little, if at all, by the establishment of a lumber yard on this property.

Insofar as valuations of the property in the area are concerned, language used in *Reschke* v. *Village of Winnetka*, 363 Ill. 478, is particularly applicable to the situation here. In that case we said: "The property zoned and used for industrial purposes, in the same block, together with that which was used for nonconforming purposes, when the ordinance was adopted and the village yard since established, have already caused almost all the damage that may be expected from such uses."

This court has often been faced with the problem of zoning ordinances attempting to regulate the fringe areas of residential districts. (*Ehrlich* v. *Village of Wilmette*, 361 Ill. 213; *2700 Irving Park Building Corp.* v. *City of Chicago*, 395 Ill. 138.) In *Offner Electronics, Inc.* v. *Gerhardt*, 398 Ill. 265, we characterized situations of this kind, saying, "Indeed, the zoning of streets lying along the edges of residential districts for business and commercial purposes is a recognized method of zoning. (*Forbes* v. *Hubbard*, 348 Ill. 166.) Plaintiff's property is not characterized by the residential area to the west of it on North Sawyer Avenue, but, instead, by the business district on Kedzie Avenue of which it is a component part." Such is the situation here. No other result can be had in this case other than that the property in question here is characterized by the nature and use of property all along the railroad right of way in the area in question.

A careful review of this record discloses that the zoning of the property has prevented the land from being put to its highest and best use and that by reason of this ordinance

the value of the property in question has been substantially depreciated. Under any of the valuations used by any of the experts, the damage to the property is great and the gain to the public is small. Add to these factors the purchase by the defendant in reliance upon the zoning ordinance of 1946, and we reach the inescapable conclusion that the rezoning of the property from manufacturing to residential purposes was unreasonable and arbitrary and had no firm basis in, or relation to, the public health, morals, safety or general welfare. For these reasons, the judgment of the circuit court of Cook County is reversed, and the cause remanded, with directions to award the writ as prayed.

*Reversed and remanded, with directions.*