(No. 31785.—

PIONEER TRUST & SAVINGS BANK, Trustee, *et al.,* Appellees, *vs.* THE VILLAGE OF OAK PARK, Appellant.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

TENNEY, SHERMAN, ROGERS & GUTHRIE, WILLIAM P. CHURCHILL, and EDWARD S. CODY, all of Chicago, (S. ASHLEY GUTHRIE, SAMUEL R. LEWIS, JR., and JOHN P. FORESTER, of counsel,) for appellant.

JACOB SHAMBERG, and SAMUEL T. COHEN, both of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the village of Oak Park, hereinafter referred to as the Village, from a declaratory judgment of the circuit court of Cook County finding the zoning ordinance of the Village unconstitutional and void as applied to the property of the Pioneer Trust & Savings Bank and John Kempston, property owners, hereinafter referred to as plaintiffs.

The plaintiffs are the owners of four parcels of real estate lying vacant on Harlem Avenue in the three blocks between LeMoyne Parkway and Division Street in the Village. Harlem Avenue is the west boundary of the Village and the property lies within a block of the north boundary. Across Harlem Avenue from the plaintiff's property is the village of River Forest.

It appears that by the original 1921 zoning ordinance the property in question was placed in a district where multiple-family apartment buildings of not more than fifty feet (three stories) in height were permitted, with space limitations of 450 square feet per family. The property

to the east was zoned for single-family residences. At the time the original zoning ordinance was passed in 1921, the entire area, which encompasses the property in question, was undeveloped. Since that time the territory to the east of Harlem Avenue has been almost completely built up with single-family residences, while the property along Harlem Avenue in the area in question, including the plaintiffs' lots, has remained primarily vacant.

The property across the street in River Forest has been developed by three-story apartments and business property and has received comparatively wide usage for these purposes.

In 1947, after an extensive survey and a comprehensive report by one Harland Bartholomew, a recognized expert, a completely revised zoning ordinance was passed by the Village, whereby one substantial change was made in the regulations applicable to the district in which the plaintiffs' land lies. This change lowered the permissible height of apartment buildings that might be built thereon from 50 feet (3 stories) to 35 feet (2½ stories,) and increased the minimum required lot area per family from 450 square feet to 1,000 square feet.

The evidence disclosed that on the Oak Park side of the area in question there had been built a filling station, a real estate office, and a greenhouse, while on the opposite side of the street in River Forest there are filling stations and 3-story multiple apartments to the south, none of which lie opposite plaintiffs' property. Further, on the River Forest side of the street there are some 2-story house developments and single-family residences, although the property is zoned for other use. In addition, there is the campus of the Dominican College.

It was testified to by the plaintiffs that they purchased the property in reliance on the 1921 zoning ordinance and had made specific inquiries as to the type of zoning embracing the property in question.

The court below found that under the 1921 ordinance there was a limitation on building height of 50 feet and an area of restriction of not less than 450 square feet per family, which was not applicable to hotels or apartment hotels. The court further found that prior to the purchase of the real estate the plaintiffs caused inquiry to be made of the building commissioner as to the zoning classification of the property in question. It was further found by the court that the purchase of the property was brought about with knowledge of and reliance on classifications of the 1921 ordinance. The court then found that in 1947 a new ordinance was adopted by the village of Oak Park, which re-classified the subject property into an "E" multiple-dwelling district, which permitted the uses of multiple dwellings with limitations that no building should exceed 2½ stories or 35 feet, and a limitation of four apartments for four families in any single building with a lot area of not less than 1,000 square feet per family. The court further found that the highest and best use of the plaintiffs' property is for multiple dwellings of more than 2½ stories, as is demonstrated by the zoning and use of the frontage at the northwest corner of Harlem Avenue and Le Moyne Street. The court then found that the value of the property for use under the zoning ordinance of 1921 was greatly in excess of the value of the property under the amended zoning ordinance of 1947 and that this latter ordinance ignored the use and zoning of the land on the opposite and contiguous frontage on the opposite side of the street, whereby the value of the land was depreciated. The court lastly found that the zoning ordinance of 1947 had no substantial relationship to the public health, safety, comfort, morals, and general welfare of the village of Oak Park. The court stated that there had been no change in the nature of the area in which the property was located between the original zoning ordinance and amendatory zoning ordinance of 1947,

which had any bearing or relationship to the public health, safety, comfort, morals, or general welfare which justified the change, and that the plaintiffs had a right to rely on the original zoning. The court then found the amendatory ordinance void as to the property in question.

On behalf of the Village, the expert, Bartholomew, testified that the limitations imposed on this district constituted a reasonable restriction, taking into consideration the use and height of the buildings throughout the Village and the use and zoning of property across the street in River Forest. He had found in his survey that there was little occasion for a building development greater than two stories in height. He further stated that of the entire frontage of the east side of Harlem Avenue in Oak Park, 85 to 90 per cent was of 2-story construction and that the introduction of 3-story buildings on either side of Harlem Avenue was contrary to the proper development of Oak Park and that resulting increases in population would endanger the safety, health and character of the community. It was further stated that the development in the neighborhood of plaintiff's property to the east is one of the most desirable in Oak Park and that the allowance of 3-story structures would be detrimental to the Village. A member of the zoning board, one Erickson, stated that zoning of the property for 3-story apartments would injure the property to the east, introduce health and safety hazards, and affect taxable factors adversely.

One witness for the plaintiffs, Kincaid, testified that such use as advocated by the expert was not reasonable. Another witness for plaintiffs stated that plaintiffs' property was worth $150 a front foot if zoned for 3-story apartments and $80 a front foot if zoned for 2½-story apartments accommodating not more than four families.

There is some question as to whether or not the zoning ordinance in question does limit the use of the property to 4-family buildings.

The principal issue involved here, however, and the question with which this court is faced is whether or not, under the law, any valid reason has been shown for changing the classification of 1921 by the ordinance of 1947. This also entails a consideration of whether or not there has been any substantial relation between the change in classification and the public welfare of the village of Oak Park so as to justify the attempted deprivation of appellants' property rights.

Both parties to this cause have cited the case of *Quilici* v. *Village of Mount Prospect*, 399 Ill. 418. Another recent case cited by the plaintiffs herein is *People ex rel. Joseph Lumber Co.* v. *City of Chicago*, 402 Ill. 321. Inasmuch as these are two of the most recent cases involving the question before the court and further, since the cited cases by both parties are, in the main, basically of the same reasoning as those cases, we must consider the law as expressed therein, in accordance with the facts found in the record here to determine the rights of the respective parties.

In both the *Quilici* and the *Joseph Lumber Co. cases,* the evidence disclosed heavily travelled streets with no buildings whatsoever along the travelled highway. The evidence disclosed that the plaintiffs in those cases purchased the property relying upon the zoning ordinance in existence at the time of purchase. In those cases the expert testified as to the value for manufacturing use and the value for residential purposes, and it was determined that the manufacturing use was the highest and best value to which the land could be put.

It would seem that both the plaintiffs and the Village agree as to the propriety of the rulings in the *Quilici case* and in the *Joseph Lumber Co. case.* The main disagreement between them is that the Village contends that these cases do not apply if the amendment of 1947 was a proper exercise of the police power and in the furtherance of the

welfare of the Village. It states that the legislative judgment as to the propriety and advisability of the new zoning ordinance is controlling unless it is clearly shown that it is unreasonable and has no substantial relationship to the public good. It contends that here the evidence does not show that the regulations are arbitrary or unreasonably burdensome on the plaintiffs' property, but, on the contrary, shows that they were general in their application and were adopted after thorough study. It then declares that the legislative judgment of the Village in passing the zoning ordinance must prevail and the zoning ordinance must be held valid.

This necessarily brings us to a consideration of the evidence in the cause. As we pointed out in the *Joseph Lumber Co. case,* we have often been faced with the problem of zoning ordinances, attempting to regulate the fringe areas of residential districts. (*Ehrlich* v. *Village of Wilmette,* 361 Ill. 213; *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138.) In the *Joseph Lumber Co. case* we again reviewed the rules set forth in the case of *Quilici* v. *Village of Mount Prospect,* 399 Ill. 418. It is unnecessary to discuss these rules at great length other than to say that the city may adopt zoning ordinances as an exercise of its police power and may thereby impose a reasonable restraint upon the use of private property. (*Anderman* v. *City of Chicago,* 379 Ill. 236,) but the ordinance itself must have a real substantial relation to the public health, safety, morals, and general welfare. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.) The question of whether or not the ordinance bears any real substantial relation to the public health, comfort, safety, or welfare or is essentially arbitrary or unreasonable is a question subject to judicial review. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265.) We further stated that a zoning ordinance may be valid in its general aspects, yet invalid as applied to a particular piece of property and a particu-

lar set of facts. (*Anderman* v. *City of Chicago,* 379 Ill. 236.) Generally speaking, the legislative judgment of the municipal council is conclusive unless it is shown to be arbitrary, capricious and unrelated to the public morals, safety and general welfare. *Mercer Lumber Cos.* v. *Village of Glencoe,* 390 Ill. 138.

One of the controlling questions for us to determine is whether or not the invasion of the property rights under the purported police power is unreasonable and confiscatory, and, in so determining, we must consider the extent to which property values are diminished by the provisions of the zoning ordinance, and we must give due consideration to testimony in that regard. (*Quilici* v. *Village of Mount Prospect,* 399 Ill. 418.) The character of the neighborhood and the use to which nearby property is put is to be taken into consideration in determining this question. (*Forbes* v. *Hubbard,* 348 Ill. 166.) In any case, whether or not a particular zoning ordinance is in the interest of the public welfare must be determined upon the particular facts of the case. (*Johnson* v. *Village of Villa Park,* 370 Ill. 272.) If the gain to the public by the ordinance is small when compared with the hardship imposed upon the individual property owner by the restrictions of the zoning ordinance, no valid basis for the exercise of police power exists. *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.

The evidence here clearly indicates that the property in question is located on the western fringe of Oak Park on one of the most heavily travelled streets in the Village. The plaintiffs purchased the property at a time when the property was zoned for a 3-story residence, and made the purchase after inquiry as to the type of zoning involved in the area in question. For 23 years this property had been zoned for 3-story buildings and during that period the surrounding property developed its character. In the area behind the property to the east, the property

grew as single-residence property, and, as the court below properly pointed out, the purchasers and builders of those buildings engaged in this development knowing that their backyard, so to speak, was zoned for 3-story buildings and that at any time the owners of this property might build such buildings. The court below remarked that this did not seem to hinder the development of this single-residence district to the east.

The test in the matter before us now is whether or not the change in zoning has a substantial relationship to the public welfare. As the court below found, a mere glance at the maps involved in the cause here is convincing that there is no relationship between the change effected in 1947 and the public welfare. Across the street in River Forest from the property in question, 3-story buildings have actually been built. The northern boundary of this property is zoned for business purposes. The expert testimony on behalf of the Village was that there would be an increase, not only in congestion on the highways, but in the amount of refuse and garbage which would have an indirect effect upon the public health. The trial court below pointed out that the statements in this regard, in an attempt to satisfy the public welfare test, would apply with equal force to 3-story buildings anywhere in the entire municipality. Three-story buildings with multiple occupants increase the burden of the water supply of the sewage passages, and of vehicular traffic. How this could be measurably decreased by a reduction of one-half story in building height is not clear to this court. The only blessing that could come from this zoning ordinance is perhaps increasing the value of the property to the east of Harlem Avenue which was purchased when the 3-story zoning ordinance was in effect.

On behalf of the plaintiffs here, there was testimony to the effect that the property was worth $150 a front foot when zoned for 3-story buildings, but was worth only $80

per front foot zoned for 2½ story buildings, if the property were limited to four families per dwelling.

The only opinion in the record as to the value of the property is that the property will be depreciated by the zoning ordinance in question. This would seem to satisfy the test in both the *Quilici* and *Joseph Lumber Co. cases.*

The Village, however, attempts to state that the 1947 ordinance will not affect the number of persons using the property, inasmuch as the limitation is merely as to the amount of square feet necessary per family, and that dwellings for more than four families may still be erected on the area, and show by a chart that on each parcel many families may be contained in one building.

It is interesting to note that the court below raised a serious question as to the sincerity and credibility of the expert witnesses testifying on behalf of the Village. The court gave an illustration of what impressed it so unfavorably in that testimony. Without going into the question of the testimony itself, it is sufficient to state that the court specifically found that the expert testimony on behalf of the Village, and upon this the entire case of the Village must rest, was not worthy of belief. We, as a court, cannot substitute our judgment as to the credence of these witnesses, particularly when the language of the court below seems to be appropriate when the testimony of the experts is considered. We fail to see the difference, particularly in the area in question, between a 2½-story and a 3-story building. This is even more true when the Village states that the net result of the zoning will not change matters in any regard. If this is true, and the plaintiffs will be entitled to build as large an apartment dwelling on the property under the new 1947 ordinance as they would have under the old ordinance, then we fail to see where there is any relationship whatsoever between the 1947 zoning ordinance and the public welfare. The new zoning ordinance must accomplish something. It

must either cut down on the size of the apartment dwellings materially or it must prohibit the number of persons living in the area. In other words, it must change the character of the area in question. If it did not do this there would be no necessity for its passage in any case. Under these circumstances, we fail to see that the public welfare has been enhanced in any way. If no actual change in the use of the property has been accomplished, then there cannot be any relationship to the public good.

Both the *Quilici* and the *Joseph Lumber Co. cases* demand some evidence of a relationship between the zoning ordinances and the public welfare. As the court below properly found, not only is there no evidence of a relationship such as the law requires but the evidence establishes beyond a doubt that no such relationship exists.

The judgment of the circuit court of Cook County is hereby affirmed.

*Judgment affirmed.*