**LaSalle National Bank, a National Banking Association, Trustee Under Trust Agreement Dated October 1, 1962, and Known as Trust No. 30016, Plaintiff-Appellee, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 50,360.**

First District, Second Division.

February 8, 1966.

Rehearing denied March 25, 1966.

Opinion modified April 14, 1966.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin, Marvin E. Aspen and Ronald S. Cope, Assistant Corporation Counsel, of counsel), for appellant.

Dwight McKay, of Chicago (Sidney Z. Karasik and Paul Peter Black, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant appeals from a decree for the plaintiff which followed the recommendations of a Master. The complaint sought a declaratory decree to enjoin the enforcement of the Zoning Ordinance of the City of Chicago as applied to plaintiff's realty, located at 1101–15 East 63rd Street, Chicago, and to compel the city to issue required permits and licenses for the construction of a gasoline station.

The property has a frontage on the south side of East 63rd Street of 153.2 feet and a depth of 100 feet on the east side of Greenwood Avenue, improved with a part one story and a part two story store and office building. Three of the stores in the building are rented. The parcel is zoned B3–3. Plaintiff wishes to erect a gasoline station on the premises with two driveways on 63rd Street and two driveways on Greenwood Avenue. This use is prohibited in a B3–3 zone. In order to erect a gas station plaintiff needs a B4 classification.

The property is situated in the middle of a B3–3 zone which extends from Drexel on the west to 100 feet past Woodlawn on the east. 63rd Street is an east-west street and the north-south streets intersecting it within the zone, starting with the western-most street, are Drexel, Ingleside, Ellis, Greenwood, University and Woodlawn. To the west of the B3–3 zone, in which the subject property is located, is a B5–3 zone which extends from Drexel on the east to one block past Cottage Grove Avenue on the west, a distance of 4 blocks. To the east of the B3–3 zone is a B4–3 zone. This latter zone contains an area referred to as "baby skid row." North of 63rd Street the zoning is primarily residential.

413

63rd Street is a major traffic artery and Greenwood Avenue is a residential, southbound, one-way street. The Chicago Transit Authority owns and operates an elevated railroad in 63rd Street. The property uses along 63rd Street, one block east and one block west of the subject property on both sides of the street, are primarily one and two story buildings containing stores with some apartments or offices on the second floors. There are a few three story buildings on the street. The businesses along the street consist primarily of grocery stores, barber shops, record stores, meat markets and currency exchanges. There is a bank at the northwest corner of 63rd Street and Woodlawn Avenue. There are also some real estate offices. All of these uses fall within the B3–3 zoning classification. One block sought and a half block east of the subject property is the Wadsworth Elementary School.

To the south of the subject property and immediately adjacent thereto, is an apartment building containing 40 apartments and some stores on the ground floor. The warehouse dates back to the early 1920's. Plaintiff's Exhibit 3 indicates that there are over 150 uses in this area, which demonstrates that the area conforms with the zoning. The 4 uses cited by the City were established prior to the passage of the ordinance and are all subject to its amortization provisions. The beneficial owner of the subject property is an experienced real estate man who has been active in the Woodlawn area since he entered the real estate business in 1948. He was familiar with the existing zoning ordinance when he purchased the real estate. Plaintiff argues that zoning is "a form of public condemnation without compensation." There is nothing in the record to indicate that the beneficial owner has lost anything by this deal. It is reasonable to conclude that the price paid was in keeping with the zoning classification. The City says that the plaintiff wants a

414

B4 use for a B3 price. Plaintiff testified that the neighborhood has remained substantially unchanged. There was no testimony offered as to how much he paid for the property. When he bought the property he felt he could remodel it and turn it into something "that would be a pride to the neighborhood." He says his plans were changed because he was misled by the financial statement he got from the prior owners and because a fire burned down one of the buildings on the premises.

The first point urged by the City is that there is a presumption of validity in favor of the zoning ordinance adopted pursuant to a legislative grant; that one who attacks the ordinance has the burden of overcoming the presumption with clear and convincing proof that the ordinance is arbitrary, unreasonable and without substantial relation to the public health, safety, morals and welfare, citing Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643; LaSalle Nat. Bank v. City of Chicago, 6 Ill2d 22, 126 NE2d 643; Liberty Nat. Bank v. City of Chicago, 10 Ill2d 137, 139 NE2d 235 and other cases. Plaintiff answers that the presumption of validity which arises from the enactment of the zoning ordinance was overcome by clear and convincing proof that the amended zoning ordinance, as applied to the subject property, was arbitrary, unreasonable and without real and substantial relation to the public health, safety, morals and welfare. Plaintiff points out that on May 29, 1957, the City adopted the comprehensive amendment to the zoning ordinance and argues that by the amendment the zoning along 63rd Street was segmented into various types of business districts; that under the ordinance the property falls into a B3–3 general retail district; that for the first time since 1923, the date of the original zoning ordinance, a gasoline service station is not a permitted use in the district; that the testimony of all the witnesses confirmed that there was no substantial change in the

development of the area from 1923 to 1957, which could justify the reclassification and restriction entailed by the 1957 amendment as applied to the subject property. Plaintiff insists that under these circumstances the presumption of validity of the amendatory zoning ordinance of 1957 was overcome; that the presumption of validity is rebutted where the evidence shows that there has been no substantial change in circumstances justifying a zoning reclassification; that the same considerations which justify an original zoning ordinance must attend the amendment of that zoning ordinance and that it was incumbent upon the City to show that changed circumstances in the neighborhood required changes in the zoning, citing Zilien v. City of Chicago, 415 Ill 488, 114 NE2d 717. Plaintiff says that where the nature and character of the neighborhood has not changed and the amendatory zoning ordinance fails to bear a direct relationship to the public good, the courts have steadfastly refused to uphold the amendatory ordinance, citing Pioneer Trust & Sav. Bank v. Village of Oak Park, 408 Ill 458, 97 NE2d 302; Metropolitan Life Ins. Co. v. City of Chicago, 402 Ill 581, 84 NE2d 825, and People v. City of Chicago, 402 Ill 321, 83 NE2d 592.

The zoning area in which the subject property is located is a neighborhood retail type of business district known as a general retail district. These uses fall within the B3–3 zoning classification. The area north and south of 63rd Street is residential and institutional. One block south and a half block east of the subject property is the Wadsworth Elementary School. There is no gas station on 63rd Street from Lake Michigan on the east to Eberhart Avenue on the west, a distance of one and a half miles. The only nonconforming uses in the entire area are a movie theater located in the block between University and Woodlawn, a furniture warehouse adjacent to the subject property, a garage east of the warehouse to the rear of the property and

416

facing out on a partial alley and a dry cleaning establishment in the block to the west of the subject property on the south side of 63rd Street. The testimony indicates that these 4 uses were built prior to 1957 when the present ordinance went into effect and are legal nonconforming uses. The warehouse dates back to the 1920's. The Chancellor made no determination as to which of the uses in the zone of the subject property conforms and which fails to conform to the B3–3 classification. We conclude that this finding is not sufficient to warrant the declaring of the ordinance unconstitutional in its application to the subject property. There is nothing to indicate what is meant by the term "immediate vicinity." The Chancellor considered uses as far away as Stony Island and Cottage Grove Avenues. These streets are located blocks away in different zones, and uses established in those zones bear no relationship to the subject property. No case decides that all of the uses in the zone in which the subject property is located need to be conforming. On the contrary, the enabling legislation specifically provides for the situation where there are nonconforming uses in a zone. Ill Rev Stats 1965, chap 24, § 11–13–1, provides that the powers conferred shall not be exercised so as to deprive the owner of any existing property of its use or maintenance nor the purpose to which it is then lawfully devoted, "but provisions may be made for the gradual elimination of uses, buildings and structures which are incompatible with the character of the districts in which they are made or located. . . ."

▇ In City of Aurora v. Burns, 319 Ill 84, 149 NE 784, the court upheld the validity of a zoning ordinance although there were 12 nonconforming grocery stores scattered throughout the district. In Cosmopolitan Nat. Bank of Chicago v. City of Chicago, 22 Ill2d 367, 176 NE2d 795, the court upheld the validity of an R3 zone although adjacent to the subject property was a non-

417

conforming garage. In Exchange Nat. Bank of Chicago v. County of Cook, 25 Ill2d 434, 185 NE2d 250, the court upheld the validity of the zoning ordinance although 31 nonconforming town houses were recently built within 600 feet of the subject property. The existence of nonconforming uses can be assumed in any zone. This fact in itself cannot invalidate the zoning ordinance. The evidence shows that the area is 96% in conformity with the zoning. The 4 uses cited by the City were established prior to the passage of the ordinance and are all subject to its amortization provisions. The area conforms with a B3–3 classification and for that reason is zoned B3–3. The zone is as large as many other zones in the City. In many areas of the City, especially on main traffic arteries, the zoning ranges from B3 to B4 to B5. For example, on 63rd Street at Halsted, the zoning is B3–3, B3–4, B4–2, B5–2 and C1–2. All of these zones in fact, are smaller than the zone in which the subject property is located. Main streets in any large city do not develop along one line. The zoning here in question is made up of almost entirely B3 uses and the subject property is located in its center. It is axiomatic that zoning boundaries must begin and end somewhere. Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96. The boundary lines in the case at bar begin and end around the area consisting of B3 uses.

The Zilien case, relied upon strongly by plaintiff, deals with undeveloped property owned by the plaintiff therein prior to the change in zoning. The court said, page 494: "It would appear . . . that certain of the blocks were arbitrarily singled out for rezoning to business use." In the instant case the land is fully developed with B3 uses and this fact constitutes a rational basis for zoning the area B3. In addition, there was an equitable situation involved in Zilien not available to the plaintiff herein. The court in Zilien (415 Ill p 493), emphasized that the owner "has the right to rely upon the rule of law that the

classification of his property will not be changed unless the change is required for the public good." Here, the beneficial owner of the subject property purchased the property with full knowledge of the existing zoning. He placed no reliance on the existing classification.

The challenged zoning ordinance prohibits the erection of a gas station at this location. This is a legitimate legislative finding and the plaintiff failed to show that the restriction was arbitrary, unreasonable or capricious. The beneficial owner of the subject property testified that no one else has been permitted to build a gas station along 63rd Street in the zone in which the subject property is located. The zoning ordinance serves to protect the school children who attend a nearby school and the residents of the block on which the plaintiff's proposed gas station would be located, from a serious traffic hazard and it bears a reasonable relation to the public health, safety, morals and welfare. The zoning ordinance preserves the integrity of the area which serves as a center of social and civic activity. A breakdown in the integrity of this zone will mean the imposition of unwanted B4 uses.

Where the very best that can be said of plaintiff's position is that a legitimate dispute may exist as to the desirability of the zoning classification imposed, the ordinance must be upheld, as the courts cannot substitute their judgment for that of the duly constituted legislative body of the municipality. See Exchange Nat. Bank of Chicago v. County of Cook, 25 Ill2d 434, 185 NE2d 250; Vedovell v. City of Northlake, 22 Ill2d 611, 177 NE2d 124; Cosmopolitan Nat. Bank of Chicago v. City of Chicago, 22 Ill2d 367, 176 NE2d 795, and LaSalle Nat. Bank v. Chicago, 6 Ill2d 22, 126 NE2d 643.

The zoning ordinance was passed pursuant to the power conferred upon the City by the legislature. The ordinance bears a reasonable relation to the public health, safety and welfare of the people. Therefore the decree is

reversed and the cause remanded with directions to dismiss the complaint for want of equity.

Decree reversed and cause remanded with directions.

BRYANT, P. J. and LYONS, J., concur.