(No. 30932.

ARTHUR T. GALT *et al.*, Appellants, *vs.* THE COUNTY OF COOK, Appellee.

*Opinion filed March 22, 1950.*

TUOHY & QUINN, of Chicago, (DANIEL D. TUOHY, of counsel,) for appellants.

JOHN S. BOYLE, State's Attorney, (GORDON B. NASH, MELVIN F. WINGERSKY, and RICHARD A. NAPOLITANO, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal by the plaintiffs, Arthur T. Galt and Ida Cook Galt, his wife, from a decree of the superior court of Cook County sustaining the validity of the Cook County zoning ordinance to the extent it classifies part of a certain tract of land owned by plaintiffs in a residential district. The defendant, the county of Cook, prosecutes a cross appeal from the remaining part of the decree invalidating and enjoining the enforcement of a special building-line restriction in its application to all of the same tract of land. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires an appeal to this court.

The property in question is approximately one-half mile long and 275 feet deep and adjoins the south side of North Avenue between First Avenue and Ninth Avenue in the unincorporated area of the county. It is intersected by only one public road, Fifth Avenue. By the Cook County zoning ordinance adopted August 20, 1940, except for both corners at Fifth Avenue, which are zoned in a B-2 (business-tavern and amusement) district, all of plaintiffs' land between First and Fifth avenues is zoned in an I-1 (industry-light) district, and the land from Fifth Avenue west to Ninth Avenue is zoned in an R-4 (residential-10,000 square feet) district. Only single-family residences on building lots at least 10,000 square feet in area and having a minimum average width of 65 feet are permitted in an

R-4 district. North Avenue, in the vicinity of plaintiffs' property, is a heavily traveled four-lane State-bond-issue and section line road having a right of way 66 feet wide. Instead of a setback of 80 feet from the center line of the highway, of general application to lands adjoining Federal-aid, State-aid, State-bond-issue and section line roads, plaintiffs' land is burdened with a special building line 130 feet from the established center line of North Avenue. Plaintiffs have challenged both the residential classification of part of their land and the special building line applicable to all their property as being arbitrary, unreasonable and confiscatory, and, hence, unconstitutional and void. The defendant county denied that the restrictions attacked are unreasonable in their application to plaintiffs' property.

The cause was heard before the chancellor and the relevant facts are not disputed. All of plaintiffs' land zoned for residential purposes is vacant, although the south 100 feet is leased to the Maywood Park Trotting Association for use as a parking lot and there is a gasoline station at the corner of Fifth Avenue where the land is zoned in a B-2 district. Apartment buildings not being permitted in any district higher than a B-1 (business) district, plaintiffs, in 1946, petitioned the zoning board of appeals and the county board of commissioners to reclassify this land into a B-1 district so that they could improve the property with a building containing both stores and apartments. The petition was denied and plaintiffs thus exhausted their administrative remedies before instituting the present action for injunctional relief.

The land immediately west of plaintiffs' property along the south side of North Avenue lies in Melrose Park and is zoned for business purposes all the way to Twenty-fifth Avenue. Although the land is largely vacant, there are some businesses, among them a milk processing and distribution plant at Fifteenth Avenue. Beyond Twenty-fifth Avenue there is an industrial area. The land adjoining the

north side of North Avenue is under the jurisdiction of the county and, while there is no affirmative showing as to how it is zoned, the record discloses it is not zoned for residential purposes and some of the property is used for business purposes, as, for example, the large florist and nursery establishment with numerous greenhouses located just west of Ninth Avenue.

The property directly across North Avenue from plaintiffs' residentially zoned tract is classified in an F (farming) district and in a B-2 (business-tavern and amusement) district. There is a large vegetable stand on part of the property and a tavern at the corner of Fifth Avenue.

As related, plaintiffs own the land adjoining the south side of North Avenue between Fifth and First avenues. Although there is a gasoline station, some vacant property and a railroad right of way near First Avenue and a milk bar on the corner of Fifth Avenue, this land is occupied for the most part by the Maywood Park Trotting Association under a long-term lease. The trotting association maintains a harness race track where pari-mutuel betting is conducted and a large stable area adjacent to Fifth Avenue. The property on the north side of North Avenue in the same area is variously zoned in B-1, B-2, and I-1 districts and is occupied by a roller skating rink, a midget golf course, the railroad right of way and amusement places for children.

From First Avenue east one-half mile to Thatcher Road, the entire north side of North Avenue is used for forest preserve purposes. On the south side of the highway, the first 600 feet is zoned in an I-1 district. There follows an R-4 district and then more forest preserve land. The corner at Fifth Avenue is occupied by a fruit stand. The land zoned in an R-4 district is the only property along North Avenue for several miles in either direction from plaintiffs' land which is zoned for residential purposes. It is occupied, in part, by two houses and is subject to the

following nonconforming uses: an exercise track and barn for horses, a restaurant and tavern, a wholesale and retail poultry business, a golf driving range and amusement places. East of Thatcher Road, North Avenue runs through Elmwood Park, River Forest, and Oak Park and all the land on both sides of the road is zoned for business use.

As to North Avenue itself, State traffic engineers, testifying for defendant, reported that the average volume of traffic on North Avenue at Fifth Avenue was 11,000 passenger cars and trucks per day in 1941 and had increased to 15,000 automobiles and trucks per day in 1947.

An experienced and highly qualified real-estate broker, who lived in the vicinity of plaintiffs' property, testified that the land between Fifth Avenue and Ninth Avenue, zoned in an R-4 district, was worth $15 a front foot and that, if classified in a B-1 district, it would be worth from $150 to $250 a front foot. A second witness for plaintiffs, a realtor and builder with twenty-seven years' experience in the Chicago area, stated that the property, as then zoned, was worth from $15 to $20 a front foot and that, if zoned for business purposes, its value would range from $350 a front foot at the corner of Fifth Avenue, down to $175 a foot in the center of the tract and then up to $275 or $300 a front foot near Ninth Avenue. In addition, the president of the oil company occupying the southwest corner of Fifth Avenue and North Avenue testified he had offered to lease this tract, having a frontage of 200 feet on North Avenue, for a period of twenty-five years at a monthly rental of $400.

The principal witness for defendant was Robert Kingery, manager of the Chicago Regional Planning Commission since 1924, chairman of the Cook County Zoning Commission which drafted the county zoning ordinance, and chairman of the county zoning board of appeals since its creation in 1940. Much of Kingery's testimony dealt

with the zoning and actual use of the land adjoining North Avenue, already recounted. Kingery further testified that early zoning ordinances had improperly allocated too much space to business and commercial uses; that zoning surveys revealed a standard ratio between population and land actually used for business purposes, and that, in drafting the ordinance, the zoning commission had allowed for the future increases in the population of the unincorporated area of the county by providing for three times the amount of business property actually required at the time the ordinance was adopted. On cross-examination, when asked if he would consider living or building on property such as plaintiffs, Kingery replied, "I would if I had no other place to go."

The facts pertinent to a determination of the validity of the special building-line restrictions applicable to plaintiffs' property may be briefly stated. Section 17 of the Cook County zoning ordinance ordains that no part of any building or structure shall be located within 80 feet of the established center line of any Federal-aid, State-bond-issue, State-aid and section line road, or within 70 feet of the center line of any half section road, or within 63 feet of the center line of any other road or street, provided that special setbacks, where noted, shall be observed. When the ordinance became effective in 1940, special setbacks of 130 feet were imposed on parts of five highways, including North Avenue from Thatcher Road west to Du Page County.

As previously stated, North Avenue is a State-bond-issue road having a right of way 66 feet wide. To sustain the special setback of 50 feet in excess of the usual building-line restrictions applicable to State-bond-issue roads, thus depriving plaintiffs of the use of their land within 97 feet of the south line of the highway right of way, the defendant, the county of Cook, relied upon the then existing and long contemplated preparations to widen

North Avenue. In 1925, the Chicago Regional Planning Commission adopted a plan for a system of highways having rights of way from 160 to 300 feet wide and North Avenue was one of the highways so designated. At that time, there was no road on parts of the line of North Avenue in the western part of the county. Moreover, regional planning commissions did not receive official recognition until 1929, (Laws of 1929, p. 308,) and their powers are still advisory, only. (Ill. Rev. Stat. 1949, chap. 34, par. 152d.) In 1927, the county board of commissioners adopted a special resolution declaring that North Avenue had a right of way 200 feet in width, stating the land would be acquired eventually, and requiring the dedication of 200-foot rights of way in all new subdivisions adjoining the highway. In February, 1930, the county board passed a second resolution noting the broad right of way did not exist until the land was subdivided, declaring, "it is in the interest of public convenience and welfare to protect these potential rights of way against the encroachment of permanent improvements," and establishing a building line 100 feet back from the center line of North Avenue. Although the existing highway was completed in the same year, it was not until 1933 that a statute was passed authorizing counties to establish building lines "to the end that adequate safety may be secured and the congestion of public roads * * * may be lessened or avoided." Laws of 1933, p. 421; Ill. Rev. Stat. 1949, chap. 34, par. 152e.

In 1940, the setback was increased to 130 feet from the center line of the highway by the county zoning ordinance. In the same connection, Kingery, who was chairman of the commission which drafted the ordinance, testified that one of the four principal purposes of a building-line restriction is "in the interest of the public, [so] that when an improvement does come along as is planned in this case, the State or the county will not be obliged to

pay excessively for removing improvements which are in the way of ultimate highway improvement." Plans of the proposed widening were introduced in evidence showing a six-lane highway with a center parkway and a side parkway, service drive and sidewalk area on either side. It was also established that all plans for the new highway had been approved by the necessary public authorities and that, for two or three years prior to the trial in 1947, the State had been engaged in purchasing and condemning land required for the improvement between Thatcher Road and Twenty-fifth Avenue.

The rules of law applicable to cases of this character have frequently been considered by this court and are well established. Municipalities and counties may adopt zoning ordinances in a proper exercise of the police power and may thereby impose a reasonable restraint upon the use of private property. (*Braden* v. *Much*, 403 Ill. 507; *County of Du Page* v. *Henderson*, 402 Ill. 179.) To be valid, a zoning ordinance must have a real and substantial relation to the public health, safety, morals or general welfare. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago*, 402 Ill. 321; *2700 Irving Park Building Corp.* v. *City of Chicago*, 395 Ill. 138.) A zoning ordinance may be valid in its general aspects, yet invalid as applied to a particular piece of property and a particular set of facts. (*Anderman* v. *City of Chicago*, 379 Ill. 236; *People ex rel. Kirby* v. *City of Rockford*, 363 Ill. 531.) Whether the restraints imposed by a zoning ordinance upon the use of private property bear a real, substantial relation to the public health, safety, comfort or welfare, or are essentially capricious and unreasonable, is a question subject to judicial review. (*Offner Electronics, Inc.* v. *Gerhardt*, 398 Ill. 265; *Harmon* v. *City of Peoria*, 373 Ill. 594.) In ascertaining whether a particular zoning ordinance is in the interest of the public, each case must, of course, be determined on its

own peculiar facts. (*Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418; *Johnson* v. *Village of Villa Park,* 370 Ill. 272.) The presumption obtains that a zoning ordinance is valid and the burden of proof is upon the party attacking the ordinance to show affirmatively that it is arbitrary and unreasonable. *City of Springfield* v. *Vancil,* 398 Ill. 575; *DeBartolo* v. *Village of Oak Park,* 396 Ill. 404.

Among the particular facts to be taken into consideration in determining whether a purported exercise of the police power is so unreasonable and confiscatory as to constitute an unlawful invasion of property rights are the character of the neighborhood and the zoning classification and use of nearby property, (*Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418; *Forbes* v. *Hubbard,* 348 Ill. 166,) the extent to which property values are diminished by the particular zoning restrictions involved, (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Ehrlich* v. *City of Wilmette,* 361 Ill. 213,) and the gain to the public compared to the hardship imposed upon the individual property owner. (*Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418; *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.) The effect of a zoning ordinance upon land values is not controlling, but is a proper element to be considered and may be persuasive in passing upon the validity of the ordinance. *Braden* v. *Much,* 403 Ill. 507; *Metropolitan Life Ins. Co.* v. *City of Chicago,* 402 Ill. 581.

In answer to plaintiffs' contention that the facts reveal the zoning ordinance is arbitrary and unconstitutional to the extent it classifies the western part of their land in a single-family residential district, the defendant county asserts that plaintiffs have failed to sustain the burden of showing the unreasonablness of the ordinance. Manifestly, the appropriate and legitimate uses of the land in question are characterized by property along North Avenue in the immediate vicinity. The undisputed evidence, much of it

introduced by defendant, shows that North Avenue is an exceptionally heavily traveled four-lane highway; that, for all practical purposes, plaintiffs' property is the only land zoned for residential use in a predominantly business and industrial district, and that, while a considerable portion of the land is vacant, the property involved is surrounded by a large florist establishment to the west, a vegetable stand and tavern across the highway and a gas station, race track and stables, a roller skating rink, and other amusement places immediately to the south. Furthermore, the evidence of plaintiffs' witnesses that the land is worth about $20 a front foot, as presently zoned, and would be worth from $150 to $300 if zoned for business uses stands unchallenged, and it is apparent that the use of the property for business purposes will not adversely affect the value of other properties in the neighborhood. The record impels the conclusion that there is no real or substantial relation between the zoning of plaintiffs' land and the public health, safety, comfort, morals or general welfare, and the gain, if any there be, to the public resulting from the ordinance is exceedingly small compared to the hardship imposed upon plaintiffs. The restriction as to land use being unreasonable and unconstitutional, the part of the decree appealed from by plaintiffs cannot stand.

To obtain a reversal of the part of the decree adverse to it, defendant contends that it has the authority to establish building lines and that the restriction imposed by the ordinance is reasonable and proper. Plaintiffs do not deny the authority of the county to establish building lines nor have they challenged the 80-foot building line applicable to State-bond-issue roads generally. They simply contend that the special setback restriction of 130 feet is arbitrary and discriminatory and was imposed in anticipation of condemnation in order to reduce the costs of acquiring the property.

Although defendant argues that the special setback restriction is reasonable, we observe that when North Avenue

is improved to a width of 200 feet the building line will be 30 feet from the right of way but plaintiffs' land is now, and has been for many years, burdened with a building line 97 feet from the existing 66-foot right of way on North Avenue. The county board of commissioners having found that a setback of 30 feet from a 200-foot superhighway right of way is reasonably adequate to promote and safeguard the public welfare, it follows that a setback more than three times greater applied to a highway right of way more than three times narrower is unreasonable, capricious and discriminatory. Furthermore, the record makes it abundantly clear that the primary purpose of the special setback restriction was to hold down the cost of acquiring additional land for the widening of North Avenue and that this was to be accomplished at the expense of a few individual landowners. In both purpose and extent the restriction involved bears no perceptible relation to the public health, safety, comfort and general welfare. It destroys, rather than conserves, land values, and being designed to conserve public funds in the purchase of land, has, at the most, only a remote and incidental effect upon the reduction of traffic congestion. The chancellor correctly determined that the special setback restriction is unconstitutional and void in its application to plaintiffs' property.

The part of the decree sustaining the provisions of the county zoning ordinance classifying the western part of plaintiffs' land in an R-4 district is reversed and the cause is remanded to the superior court, with directions to amend the decree in conformity with the views expressed herein. In all other respects, the decree is affirmed.

*Affirmed in part and reversed in part*
*and remanded, with directions.*