Grand Trunk Western Railroad Company, Plaintiff-Appellee, v. City of Chicago, Defendant-Appellant.

Gen. No. 45,626.

Opinion filed March 19, 1952. Released for publication April 25, 1952.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, for appellant; L. LOUIS KARTON, Head of Appeals and Review Division, and ARTHUR MAGID, Assistant Corporation Counsel, both of Chicago, of counsel.

WINSTON, STRAWN, BLACK & TOWNER, of Chicago, and H. V. SPIKE, of Detroit, Michigan, for appellee; JOHN C. SLADE, BRYCE L. HAMILTON, and EDWARD J. WENDROW, all of Chicago, of counsel.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action to nullify, enjoin enforcement of, and remove as a cloud upon the title to plaintiff railroad's property, a zoning ordinance of the City of Chicago. The decree was in plaintiff's favor, and the city has appealed.

Plaintiff's Elsdon Yard extends north from W. 57th Street to W. 49th Street between St. Louis Avenue on the east, and the west boundary of its right of way, just west of S. Central Park Avenue extended, on the west. North of 51st Street, part of the yard curves east to Kedzie Avenue. This is plaintiff's main yard where all of its Chicago bound freight trains are broken up and the cars distributed. The property embraced within the boundaries has been used for railroad purposes by plaintiff's predecessors and plaintiff since 1887.

In the original Chicago zoning ordinance of 1923, the area containing the Elsdon Yard was classified

378

Manufacturing, with industrial and railroad uses permitted. In the comprehensive ordinance of 1942, the area was classified as Manufacturing, with railroad uses continued but industrial uses eliminated. In January, 1948 plaintiff obtained a city permit to construct a freight house in the Elsdon Yard premises south of 55th Street. Soon afterward, the permit was revoked because it violated an amendatory zoning ordinance passed December 30, 1947. The amendment changes, from Manufacturing to Family Dwelling use, the zoning classification of plaintiff's property bound by the "alley next south of West 55th Street; South St. Louis Avenue; West 57th Street; and the right of way of the Grand Trunk Western Railroad." This area contains about fifteen acres.

This suit was begun in April 1948. The issues were referred to a master. He recommended that a decree be entered granting the full relief prayed for by plaintiff. The decree was entered in conformity with the recommendation.

The chancellor, on the basis of the master's report, found that the premises are an integral part of plaintiff's Elsdon Yard; that they have been used for railroad purposes continuously except for those parts leased from time to time for industrial purposes; that they embrace the only site plaintiff owns suitable for freight house purposes; that under the terms of the amendment, use of the premises for railroad purposes other than those existing at the time of the ordinance are prohibited; that 80 to 90% of the residences east and south of the premises were built during 1928 and 1929; that the highest and best use of the property is for railroad use, including a freight house, and that this use has value greatly in excess of Family Dwelling use; and that the amendment was sought primarily to facilitate the building of a park or playground. On these findings, he decided that the ordinance bore

no reasonable relation to public health, safety, morals or comfort, and was unreasonable, arbitrary and confiscatory.

Exhibits in the record represent generally the character of plaintiff's property. 55th Street bisects it. South of 58th Street there are only two tracks on plaintiff's north and southbound right of way. These are the "East" and "West" main tracks. Just south of 57th Street a branch leads from these tracks to form south of 55th Street several other branches and many tracks. The eventual system of tracks south of 55th Street on the property subject of this suit is, from west to east: the two main tracks; nine adjacent tracks parallel to the main tracks; a track about fifty feet east of these eleven and slightly northeasterly; about one hundred feet farther east, a spur track ending south of 55th Street; and about one hundred-fifty feet east of the spur track the northeasterly lead which curves across the property from the main track at about 57th Street to a point about one hundred feet west of St. Louis Avenue where it turns due north across 55th Street.

North of 55th Street the nine tracks east of the two main tracks, the slightly northeasterly track fifty feet to the east, and the northeasterly lead form a more complex arrangement: between 55th and 51st Streets from west to east are the main and the adjacent nine tracks; sixteen parallel tracks adjacent and parallel to the nine formed by the slightly northeasterly track; four parallel tracks farther east formed by a northwesterly branch (now eliminated) from the northeasterly lead; and five tracks still farther east formed from the northeasterly lead. This shows that though the Elsdon Yard proper is north of 55th Street, south of 55th Street are formed the branches which lead to and eventually give rise to the multitude of tracks forming the yard proper.

The question is whether the chancellor properly decreed that the zoning amendment of December 1947 was an unreasonable exercise of the city's police power. Plaintiff does not dispute the principles of law which underlie this question. These are firmly established in Illinois, and have been set forth at length in recent Supreme Court decisions cited by both parties. *Galt v. County of Cook,* 405 Ill. 396; *Trust Company of Chicago v. City of Chicago,* 408 Ill. 91; *Kinney v. City of Joliet,* 411 Ill. 289. Plaintiff has the right to use his property in whatever lawful way he desires. This private right is subject to the reasonable requirements of the common good which is the dominant consideration. Zoning ordinances serve the common good by regulating use of private property so as to promote the public health, safety, morals and welfare of the people. The objective of zoning is a wise balance of the free use of private property and reasonable restraints on that use in the public interest. The zoning regulation must have a real and substantial relation to public health, safety, morals and welfare. Courts must presume that in adopting zoning ordinances and amendments the legislative power was exercised with discretion. The party asserting invalidity has the onus of showing that the legislative discretion was abused. Where there is room for legitimate difference of opinion concerning the reasonableness of zoning ordinances or where the question is fairly debatable, courts will not interfere with legislative judgment. In applying these principles, each case must be considered on its own particular facts. *Galt v. County of Cook,* 405 Ill. 396; *Trust Company of Chicago v. City of Chicago,* 408 Ill. 91. Among the facts to be considered are the character of the neighborhood, classification and use of nearby property, the extent to which property values are diminished by the zoning

restriction, and the gain to the public compared to the hardship imposed on the individual property owners. *Trust Company of Chicago v. City of Chicago*, 408 Ill. 91. The effect of the restriction on land values is not controlling, but is a proper element to be considered and may be persuasive. *Galt v. County of Cook*, 405 Ill. 396.

Defendant contends that the evidence shows that the reasonableness of the relation between the ordinance and the common good is at least fairly debatable. There was no testimony to controvert estimates of plaintiff's expert witnesses that the value of the property for Manufacturing purposes was $10,000 per acre, and for residence purposes $2,000 per acre with tracks removed, and $900 per acre with tracks not removed. There was none to dispute testimony for plaintiff that railroad use including a freight house was the highest and best use of the property, or that the property had been used for railroad purposes since 1887. The chancellor was justified in finding that plaintiff had no other property suitable for the freight house. The only important disputes in the testimony are whether there has been a substantial use of the zoned premises for railroad purposes and whether the property was suitable for family dwelling.

 Witnesses for both sides testified to the constant use of the tracks next east of the right of way. The spur which ends south of 55th Street does not connect with the yard proper but serves a gas and oil plant maintained on plaintiff's property under lease. There was testimony for defendant that the easternmost track was put to little use previous to the adoption of the zoning amendment and since then has been used largely for storage of freight cars. It is not denied, however, that this track serves the several repair tracks north of 55th Street in the yard proper. We see no reason for interfering with the chancellor's finding on this issue.

There was testimony for defendant that unless the tracks were removed from the zoned premises, the only suitable property for residence would be that between St. Louis Avenue and the easternmost track. The question with respect to the zoned premises considered with the tracks removed was disputed, however. The property with tracks removed would be bound on the west by several tracks including the two main tracks. Across the street from its northern boundary would be the main yard. It is interesting to note that the estimated average value of 40′ lots with tracks removed was but $5 more per foot than their value with tracks unremoved. That people could live in the area and that many do so in similar areas cannot be denied. That the areas are suitable to be zoned for voluntary residential living is another matter. We would not be justified in setting the finding aside.

It is conceded that building the freight house will increase traffic through operation of large freight motor trucks. It must be conceded that this will increase the safety hazards confronting the residents of the community. It must be admitted too that the freight house would have some adverse effect upon the surrounding property values. The zoned premises had been selected by the Chicago Park District for a park and playground site. The selection was based upon a sociological study of the needs of the area, and there was testimony that no other vacant area was available to fill the need. There was testimony of an owner of property on St. Louis Avenue south of 55th Street, that he and his wife have small children, and would not have purchased this property had they known a freight house was to be built. There was testimony that should the amendment be sustained and the tracks moved, about 81 residential lots could be made available.

The foregoing are the plus factors established by defendant. Against them are the breaking up of

plaintiff's main Chicago freight receiving and distributing yard and the estimated loss in land value of $120,000 to $135,000. In addition, there would be the loss of the opportunity to move its freight house facilities from the area of the Dearborn Street Station to their 55th Street property where they would be convenient to the distribution center. This change of location would obviate the necessity and cost of routing incoming railroad freight cars to the Dearborn Street freight terminal.

The amendment would serve to prevent the increased safety hazard and would prevent the adverse effect upon property values. There was testimony that property fronting on the freight house would be depreciated about 20%. The answer to these difficulties is that those who purchased property in the area knew or should have known the permissible uses of plaintiff's property. This knowledge should have led to anticipation that plaintiff might avail itself at some future time of the permissive freight terminal use.

 We would not be justified in concluding that the chancellor should have decided that there was room for debate on the question whether there was a real and substantial relation to public health, safety, morals and welfare. Prevention of the prospective increased traffic hazard, protection of the values of the residences in the immediate areas, and the acquisition of a park and playground or about 80 residential lots are not real and substantial when measured against plaintiff's loss. We think the public gain is too small to warrant imposing the hardship of the ordinance on plaintiff. *Galt v. County of Cook,* 405 Ill. 396.

*Judgment affirmed.*

LEWE and FEINBERG, JJ., concur.