Harris Trust and Savings Bank, as Trustee Under Trust No. 30080, Plaintiff-Appellee, v. The City of Chicago, a Municipal Corporation, Defendant-Appellant.

Gen. No. 52,592.

First District, First Division.

March 10, 1969.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Ronald S. Cope, Assistant Corporation Counsel, of counsel), for appellant.

Jacob Shamberg, of Chicago, for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

This is an action by the Harris Trust and Savings Bank, as Trustee, against the City of Chicago, to enjoin the city from enforcing its zoning ordinance insofar as such zoning ordinance is applicable to the subject property. The case was referred to a Master in Chancery for hearing, and upon the report of the Master, a decree in favor of the plaintiff was entered by the trial court. This appeal is taken from that decree by the City of Chicago. No questions are raised on the pleadings.

The subject property is located on the east side of Clark Street between Drummond Place on the south and Diversey Parkway on the north in the city of Chicago and is in an area zoned B3–4. It is bordered on the west by Orchard Street and on the east by Lehmann Street, where the two streets intersect with Diversey Parkway. It appears from a map of the area that the subject property is located in a peninsular zone which permits only B3–4 uses, although such zone is surrounded on three sides by a large area in which the zoning is B5–4 and that the subject property faces and backs up to B5–4 uses zones. The complaint confines the subject property to 2707–2709 North Clark Street, a 50-foot frontage one-story brick building containing four stores, several currently vacant, with ground area of 3,500 square feet. (The property itself has two buildings on it, joined by a common wall, located at 2707 to 2713 North Clark Street.) The beneficial owners acquired the subject property in 1960. During the past thirty years no new buildings have been built in the area other than a bowling alley and a restaurant. There have been little, if any, changes of uses of stores in the area, nor has the charac-

ter of the neighborhood changed in this thirty-year period.

Prior to 1957, the subject property was zoned for commercial and amusement uses, under the ordinances of the City of Chicago, such as bowling alleys and skating rinks, auto service stations and garages, radio and television service and repair shops, automatic self-service launderettes and dry cleaning establishments, restaurants and taverns, including live entertainment and dancing, commercial or trade schools, open parking lots for storage of private automobiles, secondhand stores and rummage shops, funeral parlors, and such other uses permitted under a commercial zoning.

On May 29, 1957, a comprehensive zoning ordinance was adopted rezoning the subject property to a B3–4 classification and such classification did not permit any of the aforementioned uses. The plaintiff's prayer for relief asked the court to decree that the comprehensive amendatory zoning ordinance passed by the City of Chicago in 1957, insofar as it pertains to plaintiff's property, constitutes an unreasonable and capricious exercise of power on the part of the defendant. The plaintiff then asked that the court issue an injunction against the defendant from attempting in any manner to enforce the provisions of the said ordinance with respect to plaintiff's property. The case was referred to a Master in Chancery on October 20, 1965. The Master, after hearing the evidence, concluded that the plaintiff was not seeking an unlimited use of the subject property but only all of those uses allowed in a B5 zone, which were within the physical adaptability of the building located on the subject property. (The Master's report listed twenty-five such uses.) The Master recommended that a decree be entered in accordance with the prayer of the complaint. All objections to the Master's report were overruled. The trial court agreed with the Master's report and on June 8, 1967, entered a decree declaring the

1957 Zoning Ordinance void insofar as it does not allow B5–4 uses in addition to B3–4 uses of the subject property and that an injunction be issued against defendant City of Chicago from attempting to enforce the 1957 Zoning Ordinance with respect to plaintiff's property as to B5–4 uses in addition to B3–4 uses. The court allowed defendant's objections to the Master's report to stand as exceptions to such report.

Three principal issues are presented in this appeal. (1) Whether the plaintiff has established by clear and convincing evidence that the City of Chicago Zoning Ordinance is arbitrary and unreasonable as applied to the subject property; (2) Whether the trial court improperly assumed the legislative function of determining the proper zoning for the subject property; and (3) Whether the plaintiff failed to exhaust available local remedies in that he did not apply to the City Council for rezoning. The plaintiff contends that the subject property is adaptable to other uses and has a greater value for such uses than for the restricted uses permitted by the present B3–4 zoning.

Plaintiff, through its beneficial owners, has made numerous attempts to rent the vacant stores for the purposes permitted by the present zoning, but has been unsuccessful in attracting tenants due to the restricted uses of the B3–4 zoning. The plaintiff also reaffirms its position that it does not seek unlimited use of the subject property, but only to be allowed those B5–4 uses which are within the physical adaptability of the building, such uses not being obnoxious uses nor such uses which would adversely affect the surrounding area. The defendant, City of Chicago, contends that the plaintiff has not met its burden of proof as to establishing the ordinance invalid, and that the trial court assumed a legislative function in determining a different zoning for the subject property.

117

At the hearing before the Master, plaintiff called Harry L. Shlaes, a real estate broker, as an expert witness. It was Mr. Shlaes' opinion that the demand for retail stores in the City of Chicago is poor, and that in appraising property he takes the "economic approach." Shlaes further stated that the stores on the subject property might be more readily rented if the owners were "freer as to use." In Shlaes' opinion, he would permit almost any use except that which would be obnoxious from noise or odors, and he testified concerning a large number of different uses. Many of these uses would be suitable for the subject property, considering its physical limitations, and would not have an adverse affect on the neighborhood. It was Shlaes' opinion, from a practical and economic standpoint, that the zoning ordinance of 1957 was based on research developed in 1945 and 1946, and when the 1957 ordinance was passed by the City Council, it was already obsolete.

Raymond M. Hayes was called as an expert witness for the City of Chicago. Hayes was familiar with the subject property and the present zoning of the area, and it was his opinion that the best use of the subject property was a B3–4 use. On cross-examination Hayes stated that the limitation on the use of the subject property to B3–4 affected its rentability and that most of the uses in the B3–4 category which are carried over into the B5–4 category would not hurt the peace, comfort, safety or welfare of the residents in the area.

Both Shlaes and Hayes testified as to the uses in the area and the number of vacant stores. Shlaes stated that even if the zoning were changed "it would be extremely difficult to rent those stores," and on cross-examination he said he did not think the proposed change plaintiff sought would help matters very much. Hayes was of the opinion that there are vacant stores in all business areas due to the creation of new shopping centers and discount stores, and that the subdivider allowed

118

far too much business property in the area where the subject property was located.

One of the beneficial owners testified that one of the stores in the subject property has been vacant for three years, while the other store is rented to a marriage counselling service. (This marriage counselling service also appears to carry on a fortune telling and palmistry service.) The counselling service has been a troublesome tenant, and due to violations of the lease, eviction is imminent. While the beneficial owners have listed the property with brokers and placed advertisements in the local newspapers, they have been unable to rent the property. The only prospects the beneficiaries have had as to renting the premises was for the purpose of a cocktail lounge, but the present zoning would not permit such use, nor would the prospective tenant wait for the termination of litigation to open such an establishment.

Considered first is the defendant's argument that plaintiff has failed to establish by clear and convincing evidence that the City of Chicago Zoning Ordinance of 1957 is arbitrary and unreasonable as applied to the subject property. The plaintiff argues that the zoning ordinance of 1957, as applied to the subject property, is invalid because (1) there was no change in the character of the neighborhood prior to the zoning; (2) there was no public need to limit the use of the subject property to B3–4 uses; (3) an inability to rent stores in the existing building for B3–4 uses only was created; and (4) such zoning created a narrow strip zone of B3–4 uses surrounded by B5–4 zones. Plaintiff stresses that the reclassification of the subject property to B3–4 in 1957 was not for the benefit of the public need. Since there was no need for a zoning change, the action of the City Council was arbitrary and had no reasonable relation to the public health, safety, morals or welfare. Therefore, the presumption of the validity of the amendatory ordinance of 1957 disappeared when expert testimony

was introduced that there was no change in the uses or condition of the neighborhood where the subject property is located, and that limitations to B3–4 uses adversely affects the rentability of the building on the subject property. To these contentions the defendant states that none of these arguments, singly or together, justifies declaring the instant zoning ordinance invalid.

There is a presumption of validity in favor of a zoning ordinance, and one attacking the ordinance must establish by clear and convincing evidence that it is arbitrary, unreasonable and without substantial relationship to the public health, safety, morals and welfare. Rams-Head Co. v. City of Des Plaines, 9 Ill2d 326, 137 NE2d 259 (1957) ; Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96 (1962) ; Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643 (1964). While this court cannot act as a zoning body nor take any action to reclassify or rezone the subject property, it is our duty to consider the question whether the evidence presented establishes such zoning ordinance as arbitrary and unreasonable as applied to the subject property. Among the particular facts and circumstances to be taken into consideration in determining whether a zoning classification bears a substantial relation to the public welfare are the character of the neighborhood, the zoning classification and use of nearby properties, the extent to which property values are diminished by the particular zoning restrictions involved, and the gain to the public compared to the hardship imposed on the individual property owner. Trust Co. of Chicago v. City of Chicago, 408 Ill 91, 96 NE2d 499 (1951) ; Galt v. County of Cook, 405 Ill 396, 91 NE2d 395 (1950).

When all of the evidence presented is considered, it is our opinion that the plaintiff's proof fails to overcome the presumption of validity of the ordinance in question as applied to the subject property. The plaintiff emphasizes that the stores located on the subject

property would be easier to rent if they could be applied to B5–4 uses. While this may be true, there is nevertheless a failure to show the present zoning is arbitrary or unreasonable or that the desired B5–4 zoning is more desirable. The fact that the subject property may be more valuable if zoned for other uses is not decisive, as this fact exists in nearly every case where the property owner realizes he can generate increased revenues from the use of his property through uses prohibited by the zoning statute. Rams-Head Co. v. City of Chicago, supra.

The expert testimony presented by both parties shows at best a situation where room exists for a difference of opinion concerning the "best" use of the subject property and the reasonableness of the instant zoning. (Neither plaintiff nor defendant introduced any evidence from a city planner or zoning expert.) Although defendant's expert testified to twenty-five B5–4 uses (which the Master subsequently adopted in his report), which were within the physical adaptability of the subject property, there was no suggestion that the subject property would be devoted to any of these uses, and his testimony in regard to the "possible" use of the property was that of a tavern. The beneficial owner also testified that he had several offers to rent the property for use as a cocktail lounge, but had to refuse them because the zoning precluded issuance of a license for such a use.

Plaintiff's assertion that since there was no change in the character of the neighborhood in the last thirty years prior to the adoption of the 1957 comprehensive amendatory zoning ordinance, the presumption of validity of such ordinance disappeared, is not conclusive. An ordinance, whether zoning or otherwise, is presumed valid, and while this is a rebuttable presumption, it is incumbent upon the challenger to affirmatively and clearly show that it is unreasonable and arbitrary as claimed, since the ordinance will not be held unreason-

able where there is room for a fair difference of opinion on the question. Hannifin v. City of Berwyn, 1 Ill2d 28, 115 NE2d 315 (1954); Wesemann v. Village of La Grange Park, 407 Ill 81, 94 NE2d 904 (1951). In the case at bar, the plaintiff has failed to show that the present zoning is arbitrary or unreasonable and, therefore, the decree of the trial court is reversed.

In view of our holding, we believe it is unnecessary to consider the other issues raised by the defendant on this appeal.

Decree reversed.

MURPHY and BURMAN, JJ., concur.