Docket No. 100624.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MARVEL DAVIS *et al.*, Appellants, v. KIRK BROWN *et al.*, Appellees.

*Opinion filed June 2, 2006.*

JUSTICE McMORROW delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

Section 4–510 of the Illinois Highway Code (605 ILCS 5/4–510 (West 2004)) authorizes the Illinois Department of

Transportation to prepare and record maps that "establish presently the approximate locations and widths of rights of way for future additions to the State highway system." Pursuant to this statute, the Department of Transportation prepared and recorded a map that set forth a right-of-way for a proposed highway, known as the Prairie Parkway, located in northern Illinois. Plaintiffs, over 40 landowners whose property falls within the right-of-way, filed an action for declaratory judgment, seeking to have section 4–510 declared unconstitutional. The circuit court of Kendall County dismissed plaintiffs' complaint, primarily on the basis that plaintiffs had not shown any injury and, therefore, lacked standing. On appeal, the appellate court reversed the circuit court's judgment that plaintiffs lacked standing, but rejected plaintiffs' constitutional arguments on the merits. 357 Ill. App. 3d 176. For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

On October 14, 2003, plaintiffs filed a second amended complaint for declaratory relief in the circuit court of Kendall County. In their complaint, plaintiffs alleged the following. In 1999, the defendants, the Illinois Department of Transportation and its then-director, Kirk Brown[1] (collectively, the Department), began feasibility studies for a proposed highway that would connect Interstate 80 with Interstate 88 in northern Illinois. The proposed highway, which was named the Prairie Parkway, would run north and south through portions of Kendall, Kane and Grundy Counties.

Under the enabling authority granted by section 4–510 of the Illinois Highway Code (605 ILCS 5/4–510 (West 2004)), the Department began preparing a map to establish a right-of-way for the Prairie Parkway. A public hearing was held on December 11, 2001, at which time testimony was heard regarding various proposed locations for the right-of-way.

---

[1] The current director of the Illinois Department of Transportation is Timothy Martin. He is substituted for Kirk Brown as a defendant in this action. See 735 ILCS 5/2–1008(d) (West 2004).

Sometime after the hearing, the Department selected a right-of-way and completed a final map. The map was filed with the relevant county authorities on July 31, 2002.

As required by section 4–510, the Department notified those landowners with property in the Prairie Parkway right-of-way, including plaintiffs, that the final map had been approved and filed. After receiving notice, plaintiffs commenced the present action.

Plaintiffs' second amended complaint challenges the constitutionality of section 4–510. In relevant part, section 4–510 provides:

> "The Department may establish presently the approximate locations and widths of rights of way for future additions to the State highway system to inform the public and prevent costly and conflicting development of the land involved.
>
> ***
>
> The Department shall make a survey and prepare a map showing the location and approximate widths of the rights of way needed for future additions to the highway system. The map shall show existing highways in the area involved and the property lines and owners of record of all land that will be needed for the future additions and all other pertinent information. Approval of the map with any changes resulting from the hearing shall be indicated in the record of the hearing and a notice of the approval and a copy of the map shall be filed in the office of the recorder for all counties in which the land needed for future additions is located.
>
> Public notice of the approval and filing shall be given in newspapers of general circulation in all counties where the land is located and shall be served by registered mail within 60 days thereafter on all owners of record of the land needed for future additions.
>
> ***
>
> After the map is filed and notice thereof given to the owners of record of the land needed for future additions, no one shall incur development costs or place

improvements in, upon or under the land involved nor rebuild, alter or add to any existing structure without first giving 60 days notice by registered mail to the Department. This prohibition shall not apply to any normal or emergency repairs to existing structures. The Department shall have 45 days after receipt of that notice to inform the owner of the Department's intention to acquire the land involved; after which, it shall have the additional time of 120 days to acquire such land by purchase or to initiate action to acquire said land through the exercise of the right of eminent domain. When the right of way is acquired by the State no damages shall be allowed for any construction, alteration or addition in violation of this Section unless the Department has failed to acquire the land by purchase or has abandoned an eminent domain proceeding initiated pursuant to the provisions of this paragraph." 605 ILCS 5/4–510 (West 2004).

Plaintiffs' complaint is in three counts. Count I, though captioned "violation of due process," is more accurately read as alleging a takings clause violation. As the Department noted in its memorandum of law in response to plaintiffs' second amended complaint, "[u]nderlying/permeating Count I is the notion that the Defendants improperly used the sovereign's police powers, resulting in a regulatory taking." Specifically, plaintiffs allege in count I that under section 4–510, those landowners whose property falls within the right-of-way established by a map must give notice to the Department if they plan to develop their property; that once a landowner has so notified the Department, the Department has the option to commence eminent domain proceedings against the landowner; that this "option to take" has "no time constraints"; and that no compensation is provided to landowners under the statute for the creation of the "option to take." Two plaintiffs, Marvel Davis and Rojean Gum, further allege in the complaint that they would like to develop their property but have not done so for fear that if they give notice to the Department, as required by section 4–510, the Department will commence eminent domain proceedings against them.

In count II of their complaint, plaintiffs allege that section 4–510 violates separation of powers principles. Plaintiffs allege that under the state constitution, as interpreted by this court, a showing of necessity must be made before the power of eminent domain may be lawfully exercised. According to plaintiffs, section 4–510 negates this requirement, thus effectively changing "the judicial interpretation of the Illinois Constitution by way of legislative fiat" in violation of the separation of powers clause of the state constitution.

Finally, in count III, plaintiffs allege that section 4–510 violates principles of substantive due process. Plaintiffs contend that section 4–510 "is an attempt by the State to freeze property values in anticipation of possible, future land acquisitions" and, as such, is "an impermissible exercise of the State's police power."

After plaintiffs filed their second amended complaint, the Department filed a motion to dismiss pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)). The circuit court granted this motion, primarily on the ground that the plaintiffs had not yet been injured by section 4–510 and so had no standing to pursue their action for declaratory judgment. On appeal, the appellate court reversed the circuit court's judgment with respect to standing. The appellate court concluded that plaintiffs had sufficiently pled a threatened injury to their interests so as to meet the pleading requirements necessary to maintain an action for declaratory relief. Having reached this conclusion, the appellate court then accepted plaintiffs' invitation to reach the merits of their facial challenges to the constitutionality of section 4–510. Citing to *Shortridge v. Sherman*, 84 Ill. App. 3d 981, 986 (1980), the appellate court noted that it had the authority to render any judgment that ought to have been made in the circuit court (see 155 Ill. 2d R. 366(a)(5)), and that plaintiffs' facial challenges to the validity of section 4–510 could be addressed on appeal because they presented pure questions of law. Effectively treating the case as if the parties had filed cross-motions for summary judgment, the appellate court rejected plaintiffs' arguments and upheld the facial validity of section 4–510. We

subsequently granted plaintiffs' petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

At the outset, we note that neither party to this appeal contests the appellate court's decision to reach the merits of plaintiffs' facial challenges to the constitutionality of section 4–510. Further, the Department concedes that both Marvel Davis and Rojean Gum, the two plaintiffs who allege that they have forgone developing their property because of a fear that the Department will begin eminent domain proceedings, have standing to contest the facial validity of section 4–510. Accordingly, the only matter at issue before this court is the appellate court's judgment that section 4–510 is facially constitutional.[2]

Statutes are presumed constitutional. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351 (1999). The party challenging the validity of a statute has the burden of rebutting this presumption and clearly establishing a constitutional violation. *In re R.C.*, 195 Ill. 2d 291, 296 (2001). Moreover, " 'it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked.' [Citations.]" *People v. Inghram*, 118 Ill. 2d 140, 146 (1987).

Plaintiffs contend that section 4–510 is facially invalid under three constitutional provisions: the takings clause of the federal constitution, the separation of powers clause of the state constitution and the due process clause of the state constitution. In raising these facial challenges, plaintiffs

---

[2]The Department also asks this court to hold that, aside from Davis and Gum, no other plaintiff has standing to challenge the facial validity of section 4–510. In light of our holding that section 4–510 is constitutional on its face, this issue need not be considered here.

"must overcome considerable hurdles:

> 'A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.' " *In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987).

Because the appellate court's judgment that section 4–510 is constitutional on its face involves only questions of law, our review is *de novo. In re R.C.*, 195 Ill. 2d at 296.


Takings Clause

The takings clause of the fifth amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const., amend. V. The takings clause is made applicable to the states through the fourteenth amendment. *Chicago, Burlington, & R.R. Co. v. City of Chicago*, 166 U.S. 226, 41 L. Ed. 979, 17 S. Ct. 581 (1897).

The clearest example of a taking which requires just compensation under the fifth amendment "is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 161 L. Ed. 2d 876, 887, 125 S. Ct. 2074, 2081 (2005). However, the Supreme Court has recognized that

> "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster–and that such 'regulatory takings' may be compensable under the Fifth Amendment. In Justice Holmes' storied but cryptic formulation, 'while property may be regulated to a certain extent, if regulation goes too far it will be

recognized as a taking.' [*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 67 L. Ed. 322, 326, 43 S. Ct. 158, 160 (1922).] The rub, of course, has been–and remains- how to discern how far is 'too far.' " *Lingle*, 544 U.S. at 537-38,161 L. Ed. 2d at 887, 125 S. Ct. at 2081.

The general principles to be applied in determining whether a regulation goes "too far," and thus becomes a taking, are found in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978). In *Penn Central*, the Supreme Court observed that, although there was no " 'set formula' " to apply to regulatory-takings claims, there are "several factors that have particular significance." These factors include "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Central*, 438 U.S. at 124, 57 L. Ed. 2d at 648, 98 S. Ct. at 2659. In addition, the " 'character of the governmental action'–for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'–may be relevant in discerning whether a taking has occurred." *Lingle*, 544 U.S. at 539, 161 L. Ed. 2d at 888, 125 S. Ct. at 2082, quoting *Penn Central*, 438 U.S. at 124, 57 L. Ed. 2d at 648, 98 S. Ct. at 2659. See also *Lingle*, 544 U.S. at 540, 161 L. Ed. 2d at 889-90, 125 S. Ct. at 2082 ("the *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests").

In the case at bar, plaintiffs concede that the mere filing of a map setting forth a right-of-way does not, by itself, constitute a regulatory taking. See, *e.g., City of Chicago v. Loitz*, 61 Ill. 2d 92, 97 (1975) ("mere planning or plotting in anticipation of a public improvement does not constitute a 'taking' or damaging of the property affected"); *Bauman v. Ross*, 167 U.S. 548, 596, 42 L. Ed. 270, 290, 17 S. Ct. 966, 984 (1897); see generally J. Kemper, Annotation, *Plotting or Planning in Anticipation of Improvement as Taking or Damaging of Property Affected*, 37 A.L.R. 3d 127, 132 (1971). Plaintiffs contend, however, that

section 4–510 does more than just authorize the filing of a right-of-way map. Plaintiffs point out that, under section 4–510, once a landowner notifies the Department of any development plans, the Department is granted what is, in effect, an "option to take" the landowner's property. Further, no compensation is provided the landowner under the statute for the option. In plaintiffs' view, it is this "option to take" that "contains the hook which amounts to a regulatory taking."

The Department, however, maintains that section 4–510 imposes no economic restrictions on any landowner's property. According to the Department, section 4–510 "neither involves a physical invasion of property, nor deprives the plaintiffs of any economically beneficial or productive use of their land. *** The statute merely requires that if a property owner, within the boundaries of a highway corridor map, desires to rebuild, alter, add to or make improvements to an existing structure, or to create a new structure, the Department must be given prior notice of such intention and the fair opportunity–if appropriate–to acquire the property through voluntary purchase or through its eminent domain power."

The Department's contention that section 4–510 places no economic restriction on any landowner's property is incorrect. Once a landowner gives notice to the Department as required by section 4–510, the Department has 45 days to inform the landowner whether it intends to acquire the property. 605 ILCS 5/4–510 (West 2004). The Department then has an additional 120-day period either to purchase the property in a voluntary transaction or to initiate eminent domain proceedings. If the property is not acquired during this time, the landowner may proceed with development without restriction under the statute. However, during the time the Department decides what to do with the property–a reservation period that may last up to 165 days–development may not be pursued by the landowner. Thus, contrary to the Department's assertions, there is a potential economic restriction imposed on a landowner's property under section 4–510.

However, it has been held that such a restriction does not amount to a regulatory taking. In *Kingston East Realty Co. v. State*, 133 N.J. Super. 234, 336 A.2d 40 (1975), the New

Jersey appellate court considered the effect of a statutory scheme similar to section 4–510. In that case, a landowner applied for a permit to develop its property. Because the property fell within a highway planning map, the landowner could not be granted a permit under the applicable New Jersey law without first obtaining permission from the commissioner of the state department of transportation. As with section 4–510, the commissioner had, in total, as much as 165 days either to acquire the property voluntarily or to commence an action to condemn the property. *Kingston East Realty Co.*, 133 N.J. Super. at 241, 336 A.2d at 43-44. Ultimately, the commissioner took no action against the landowner's property. The landowner thereafter contended that the time during which the commissioner reviewed the matter, and a building permit was withheld, constituted a taking for which it was entitled to compensation. *Kingston East Realty Co.*, 133 N.J. Super. at 242, 336 A.2d at 44.

The New Jersey appellate court rejected this argument. The court acknowledged that the actions of the state in the case "constituted a restriction upon the use of plaintiff's property, which can be analogized to an option to purchase since its imposition was to enable the State, during the period of its existence, to determine whether or not to acquire the property for a public purpose." *Kingston East Realty Co.*, 133 N.J. Super. at 243, 336 A.2d at 45. Nevertheless, the court concluded that the restriction did not amount to a taking. In so holding, the court emphasized both the beneficial policy behind the reservation period and its limited time frame:

> "[T]he period during which plaintiff was unable to secure a building permit was substantially less than the one year period involved in [previous cases]. Moreover, the restriction thus imposed was reasonably designed to reduce the cost of public acquisitions. *** [T]he legislation is based upon a salutary recognition by the State of its responsibilities for persons displaced by highway improvements. It seeks to minimize such economic injury and grave inconveniences by avoiding these consequences through a restriction against the

physical improvement of affected property for a limited period of time ***.

> ***

> *** [T]he restrictions here are for a considerably lesser period time [than one year], and are not a blanket reservation. Under this statute, the Commissioner is required to act affirmatively and promptly–by making a decision initially with 45 days and then, if need be, taking specific action within 120 days–in order to conclude the questions of whether the land is to be acquired for transportation purposes. These statutory steps are designed to provide some assurance that the temporary restriction upon the use of the property by the State shall be expeditiously and carefully reviewed and shall not last any longer than reasonably necessary to reach a sound decision on the need for the property for transportation purposes." *Kingston East Realty Co.*, 133 N.J. Super. at 243-44, 336 A.2d at 45.

We find the reasoning of the New Jersey appellate court persuasive. Applying that reasoning here, we conclude that under section 4–510 the limited reservation period which follows a landowner's notification to the Department does not constitute a regulatory taking.

Further, we note that even assuming, *arguendo*, that a 165-day reservation period could, in some instance, amount to a taking, plaintiffs have failed to demonstrate the facial invalidity of section 4–510. Plaintiffs "face an uphill battle in making a facial attack on [a statute] as a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495, 94 L. Ed. 2d 472, 495, 107 S. Ct. 1232, 1247 (1987). To establish the facial invalidity of section 4–510, plaintiffs must show that the statue has an effect on the economic viability of every parcel of land that might fall under a right-of-way map. See *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 295, 69 L. Ed. 2d 1, 28, 101 S. Ct. 2352, 2370 (1981) (in a facial takings challenge, the question is whether the " 'mere enactment' " of the statute constitutes a taking). Plaintiffs have not met this standard.

Consider, for example, that those landowners located within a right-of-way map who never develop or alter their property will never be required to notify the Department under section 4–510. These landowners will not trigger the "option to take" provision of section 4–510 or the 165-day restriction period. For these landowners, the only effect of section 4–510 will be the creation and filing of the right-of-way map. And, as noted previously, the filing of a map, by itself, does not constitute a taking. See, *e.g.*, *Loitz*, 61 Ill. 2d at 97. Given these facts, the most that can be said with respect to the facial impact of section 4–510, that is, the impact the statute has on every landowner in every right-of-way map, is that the statute creates the *possibility* of a 165-day reservation period. We cannot say, as a matter of law, that the mere potential of a 165-day reservation period amounts to a *per se* regulatory taking for every landowner who falls within a right-of-way map. Accordingly, we reject plaintiffs' facial takings challenge to section 4–510.

## Separation of Powers

Plaintiffs contend that section 4–510 violates the separation of powers provision of the state constitution. That provision provides, with respect to the various branches of state government, that "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1.

Plaintiffs contend that it is the province of the courts, not the General Assembly, to interpret the state and federal constitutions. Plaintiffs further emphasize that this court has required that there be a showing of "necessity" before the power of eminent domain may be constitutionally exercised. See, *e.g.*, *People ex rel. Director of Finance v. Young Women's Christian Ass'n of Springfield*, 86 Ill. 2d 219, 232-34 (1981). Plaintiffs maintain that section 4–510 "allows condemnation without any legislative finding of need." In plaintiffs' view, all that is required to condemn, under the authority of section 4–510, is a landowner's notification of development or alteration of its property. Thus, according to plaintiffs, section 4–510 violates the separation of powers

provision because "the legislature cannot dispense with the constitutional requirement of necessity."

Contrary to plaintiffs' contentions, section 4–510 does not change the requirement that the Department must prove necessity to lawfully condemn property. Section 4–510 requires landowners in the right-of-way to give notice to the Department if they plan to develop or alter their properties. This notice is required to enable the Department to determine whether it wants to negotiate for the land, exercise eminent domain power, or refrain from taking any action. The notice requirement does not, however, alter eminent domain law. As the appellate court below observed, section 4–510 does nothing to reduce the obligations that the Department must satisfy if it is to lawfully condemn property. See also *Department of Transportation v. McGovern*, 103 Ill. App. 3d 461, 465 (1982) ("It is essential to observe that section 4–510 of the Illinois Highway Code is not a provision of the Eminent Domain Act"). Plaintiffs' contention that section 4–510 circumvents the requirements of eminent domain law is incorrect.

Plaintiffs further argue that, under section 4–510, the "standards and criteria by which the [Department] makes a determination to proceed with the taking process are non-existent." Citing to *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 176-77 (1995), plaintiffs maintain that section 4–510 "confers unfettered discretion upon an administrative agency" and, therefore, "constitutes an unlawful delegation of power by the legislature" in violation of separation of powers principles. We disagree.

The Department's eminent domain authority is established and governed by several provisions under the Highway Code, including, most notably, section 4–501 (605 ILCS 5/4–501 (West 2004)). Section 4–510 does nothing to alter the eminent domain requirements set forth in section 4–501 or any other provision of the Highway Code. These provisions provide the Department with constitutionally sufficient standards to govern its discretion. See also *Department of Transportation v. First Galesburg National Bank & Trust Co.*, 141 Ill. 2d 462, 466-68

(1990) (rejecting the argument that the Department's failure to adopt rules to guide its discretionary power to condemn land amounts to a due process violation). Accordingly, we reject plaintiffs' separation of powers claim.

## Substantive Due Process

Plaintiffs also contend that section 4–510 violates principles of substantive due process. In cases that do not concern fundamental rights, such as the present one, a statute which is challenged as violating substantive due process need only survive rational basis review, *i.e.*, the statute must bear a rational relationship to a legitimate state interest. *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996).

The Department maintains that section 4–510 is rationally related to numerous legitimate state purposes including, as the statute itself states, "inform[ing] the public" of the proposed highway by recording a map setting out its proposed path and preventing "costly and conflicting" land development. 605 ILCS 5/4–510 (West 2004). Plaintiffs, however, contend that section 4–510 is nothing more than "an attempt by the State to freeze property values in anticipation of possible, future land acquisitions" and, as such, is "an impermissible exercise of the State's police power."

As plaintiffs correctly note, there is a well-established line of authority, often addressing instances of spot zoning, which holds that it is an illegitimate state interest to purposefully depress property values in anticipation of future land acquisition:

> "In a number of instances it has appeared that although the zoning ordinances involved therein were ostensibly adopted in order to regulate land usage in the public interest, the real purpose for their enactment was to depress or limit property values in order to minimize the costs of acquisition of such property in anticipated condemnation proceedings. Where the evidence has been sufficient to establish such an ulterior motive, the courts have not been reluctant to declare such ordinances unconstitutional and void." J. Kemper, Annotation, *Eminent Domain: Validity of "Freezing"*

˘14˘

*Ordinances or Statutes Preventing Prospective Condemnee From Improving, or Otherwise Changing, the Condition of His Property*, 36 A.L.R.3d 751, 755-56 (1971).

An Illinois case which illustrates this principle is *Galt v. County of Cook*, 405 Ill. 396 (1950). In *Galt*, the plaintiff's property adjoined North Avenue, a heavily traveled, four-lane road. The plaintiff's property had been zoned residential under a Cook County ordinance, despite the fact that the surrounding properties were predominantly commercial. Evidence at trial showed that the land was worth about $20 a front foot as zoned under the challenged ordinance, and would be worth from $150 to $300 if zoned for business uses. *Galt*, 405 Ill. 2d at 405. In addition, plaintiff's property was burdened with a special setback provision that forbid development within 130 feet of North Avenue, a distance far greater than customary. Evidence at trial established that the setback provision had been enacted specifically because of plans to widen North Avenue. The chairman of the commission which drafted the ordinance testified that the setback was " 'in the interest of the public, [so] that when an improvement does come along as is planned in this case, the State or the county will not be obliged to pay excessively for removing improvements which are in the way of ultimate highway improvement.' " *Galt*, 405 Ill. at 402-03.

On appeal, this court struck down both the residential zoning and the setback provision. Noting the unusually large distance of the setback, the court determined that the setback provision was "unreasonable, capricious and discriminatory." *Galt*, 405 Ill. 2d at 405-06. In addition, this court stated:

"Furthermore, the record makes it abundantly clear that the primary purpose of the special setback restriction was to hold down the cost of acquiring additional land for the widening of North Avenue and that this was to be accomplished at the expense of a few individual landowners. In both purpose and extent the restriction involved bears no perceptible relation to the public health, safety, comfort and general welfare. It destroys, rather than conserves, land values, and being designed

to conserve public funds in the purchase of land, has, at the most, only a remote and incidental effect upon the reduction of traffic congestion. The chancellor correctly determined that the special setback restriction is unconstitutional and void in its application to plaintiffs' property." *Galt*, 405 Ill. at 406.

The present case is unlike *Galt* and the additional cases cited by plaintiffs. Section 4–510 is not a zoning regulation and the acquisition of land is not a hidden or ulterior motive behind the statute. To the contrary, a right-of-way map filed under section 4–510 provides a landowner with explicit notification that the Department may eventually seek to acquire their land. To the extent that such a map works to depress the value of land within a right-of-way, this is simply the unavoidable consequence of the public announcement that a highway will be built. And, clearly, the announcement of the building of a highway is not an impermissible governmental purpose. Unlike *Galt*, there is no indication that section 4–510 was enacted as a means to purposefully and improperly drive down the value of landowners' properties. For these reasons, we reject plaintiffs' facial, substantive due process claim.

## CONCLUSION

Plaintiffs have failed to establish the facial invalidity of section 4–510. Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*